Apolinar SANDOVAL, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of
Social Security Administration,
Defendant.

No. CIV.A. 3:98–CV–2090–D.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 29, 2000.

Carl Weisbrod, Morgan & Weisbrod, Dallas, TX, for plaintiff.

Susan L.S. Ernst, Ass't U.S. Atty., and Tina M. Waddell, Mark J. Kingsolver, and Kim E. Garcia, Office of the General Counsel, Social Security Administration, Dallas, TX, for defendant.

FITZWATER, District Judge.

The instant application under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for an award of attorney's fees and photocopying costs in this social security disability case presents issues concerning the awardability and reasonableness of the fees requested. The court must decide *inter alia* whether the prevailing plaintiff can recover fees for services that his attorney of record outsourced to a lawyer who neither appeared in this case nor is admitted to practice in this court or state, and fees for the out-of-state attorney's contract paralegal. The court must also resolve the *res nova* issue whether a party granted leave to proceed *in forma pauperis* is precluded from recovering photocopying costs from an agency of the United States, despite his status as a prevailing party under the EAJA.

I

Plaintiff Apolinar Sandoval ("Sandoval") sought judicial review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), of a decision of the Commissioner of Social Security ("Commis-

sioner") denying title II and title XVI disability benefits. The court remanded the decision to the Commissioner for further proceedings pursuant to the fourth sentence of § 405(g). Sandoval now applies as the prevailing party for an award of attorney's fees and costs pursuant to the EAJA.[1]

Sandoval seeks compensation for 43.3 hours of attorney services, at an hourly rate of $131.25, for litigating the merits of his disability claim. P.App. at 4–5. These attorney services consist of 14 hours for Carl Weisbrod, Esq. ("Weisbrod"), Sandoval's attorney of record, and 29.3 hours for Sarah H. Bohr, Esq. ("Bohr"). *Id.* Ex. B. Bohr has not entered an appearance in this case, is not admitted to practice in the state of Texas or in the Northern District of Texas, and did not seek leave to appear *pro hac vice.* Weisbrod outsourced[2] parts of the legal services performed for Sandoval by employing her to assist him in preparing the summary judgment brief and reply. Weisbrod Aff. ¶ 6. Weisbrod concluded that, in light of Bohr's extensive experience and expertise in litigating social security disability cases in federal court, it was more efficient to use her services than to perform all the briefing himself. *Id.*

Bohr is licensed in the District of Columbia and Florida and is admitted to practice in various district and circuit courts. Bohr Decl. ¶ 1. She is employed as an attorney by a Florida-based legal aid agency, *id.* at ¶ 2, and conducts a small private practice in which she primarily assists private attorneys in preparing federal court appeals of social security cases, *id.* at ¶ 3. Bohr has specialized in the practice of social security law for more than 19 years and has written and spoken extensively in this area of practice. *Id.* at ¶¶ 4–6; Weisbrod Aff. ¶ 7. She devoted 29.3 hours to writing Sandoval's briefs in this court. Bohr Decl. Schedule of Hours ("Sch. Hours").

Weisbrod's legal work in this case was primarily administrative. Although he devoted one hour of the 14 hours expended to examining the substantive arguments necessary to prevail on appeal, *see* Weisbrod Decl. Sch. Hours (entry of September 9, 1998), and one-half hour to legal research regarding state agency medical consultants, *id.* (entry of April 13, 1999), he focused his services principally on file review and preparation, client and court communications, and procedural matters, *see id.* Sch. Hours. The largest block of time that he recorded on any single occasion was one hour (which he did four times); the vast majority of the time entries are in increments of one-quarter or one-half hour. *Id.* The administrative emphasis of Weisbrod's services is probably due to his having employed Bohr to assist him in preparing Sandoval's summary judgment brief and reply.

Sandoval also requests compensation for 23.25 hours, at an hourly rate of $60, for paralegal services performed by Caroline

---

1. Sandoval's application is entitled as a motion made in the name of his counsel of record rather than as an application in his own name. *See* P. Mot. at 1 ("Now comes Carl Weisbrod, attorney for Plaintiff in the above entitled and numbered cause, and moves the Court for an award of attorney['s] fee[s] under the Equal Access to Justice Act[.]"). The court will treat the motion filed by counsel as the application of Sandoval. 28 U.S.C. § 2412(d)(1)(B) provides that "[a] party seeking an award of fees … shall … submit to the court an *application*" (emphasis added). Section 2412(d)(1)(A) states that the court shall award attorney's fees and expenses to "a *prevailing party*" (emphasis added). Sandoval—not his attorney of record—is the prevailing party. *See Knight v. United States,* 982 F.2d 1573, 1584 (Fed.Cir.1993) (holding that only litigant, not his attorney, can assert EAJA claim) (citing *FDL Techs., Inc. v. United States,* 967 F.2d 1578, 1581 (Fed.Cir.1992)); *Phillips v. General Servs. Admin.,* 924 F.2d 1577, 1582 (Fed.Cir.1991) (per curiam) (holding that under § 2412(d)(1)(A), "attorney could not directly claim or be entitled to the award").

2. "Outsourcing" is defined as "[t]he assignment of tasks to independent contractors, such as individual consultants or service bureaus." MICROSOFT ENCARTA WORLD ENGLISH DICTIONARY (computer version).

F. Welkley ("Welkley"). P.App. at 5. Welkley works as a paralegal for the same legal aid agency that employs Bohr and assists her "in her Social Security disability brief-writing business." Welkley Decl. ¶ 1. Welkley has prepared the statement of facts and procedural history for more than 50 briefs that Bohr has authored. *Id.* Her work for the legal aid agency primarily involves social security and supplemental income security disability cases, and she has extensive experience assisting at all stages of the administrative process. *Id.* at ¶¶ 3–4. The paralegal work she performed for Sandoval included organizing the case, summarizing the administrative proceedings and medical evidence, and preparing the procedural history, statement of the case, and summary of medical evidence for inclusion in Sandoval's brief. *Id.* Sch. Hours.

Sandoval also applies for reimbursement for photocopying expenditures of $57.00 (228 pages × $.25 per page). P.App. at 5. The total fees and photocopying costs that he seeks equal $7,135.13 (43.3 hours × $131.25 = $5,683.13; 23.25 hours × $60 = $1,395.00; and 228 pages × $.25 = $57.00).

In his reply brief, Sandoval withdraws his claim for .75 hours of Weisbrod's time. P. Rep. Br. at 22.[3] He also moves for additional fees for 21.25 hours of attorney time expended preparing his reply brief in support of his fee application. Sandoval requests for these services compensation totaling $2,789.06 (11.75 hours × $131.25 per hour for Weisbrod and 9.5 hours × $131.25 per hour for Bohr). *Id.* at 27. Sandoval also requests additional photocopying costs of $70.50 incurred in litigating his fee application. *Id.* at 18.

In his final reply brief, Sandoval applies for seven additional hours of time that Bohr expended preparing his final reply to the Commissioner's surreply. P. Final

Rep. at 9. Including attorney's fees and costs incurred in litigating his fee application, Sandoval requests the following: attorney's fees of $9,292.50 (25 hours for Weisbrod and 45.8 hours for Bohr, each at the hourly rate of $131.25); paralegal fees of $1,395.00 (23.25 hours for Welkley at the hourly rate of $60); and $127.50 for photocopying expenditures. *Id.*

The Commissioner does not contest that Sandoval is the prevailing party, but he opposes part of the fees that Sandoval requests for services performed by Weisbrod, all or part of the fees for Bohr's work, all fees attributable to Welkley, and any award of photocopying costs.

## II

### A

In his response and surreply, the Commissioner directs several objections to the part of Sandoval's application in which he seeks an award of fees for services rendered by Bohr and Welkley. The Commissioner maintains that (1) Sandoval has failed to provide sufficient information concerning Bohr's apparent contractual relationship with Weisbrod's firm to provide briefing services, presenting an "apparent relationship [that] is similar to the situation in *Moore v. Apfel*, No. J–C–97–290 (E.D.Ark. Sept. 27, 1999)," D. Resp. at 2; (2) Weisbrod does not represent that Bohr is a member of his firm, and despite the fact that Sandoval seeks fees for Bohr's services, she has neither filed a motion to appear *pro hac vice*, as required by N.D. Tex. Civ. R. 83.9(b), nor a notice of appearance in this case, and her noncompliance with this court's rules constitutes a special circumstance that renders an award of fees unjust, D. Resp. at 4; (3) Bohr is not otherwise subject to sanction by this court and yet is attempting to obtain compensation as if she were admitted, *id.* at 4–5; (4)

---

**3.** In this case the parties obtained leave to file, in addition to the briefs permitted by N.D. Tex. Civ. R. 7.1, a surreply and a reply to the surreply. For ease of reference, the court will refer to Sandoval's reply brief as "P. Rep. Br." and to his reply to the surreply as "P. Final Rep. Br."

Bohr is merely a contractor for services rather than an attorney of record and, because she has not satisfied the EAJA requirement that she appear on behalf of a party, she cannot claim attorney's fees under the EAJA, *id.* at 5; (5) alternatively, Bohr should not be compensated at attorney-level rates while she declines to subject herself to the regulation, duties, and responsibilities either of the State Bar of Texas or of this court, and, due to her unlicensed status, her participation is necessarily that of a paraprofessional under Weisbrod's supervision, *id.* at 5–6; and (6) Welkley is an employee of Bohr and any work that Welkley performed is part of Bohr's costs and not attributable to Weisbrod, *id.* at 6.

**B**

As a threshold matter, the court rejects any suggestion that Weisbrod is seeking compensation like that condemned in *Moore*.[4] In *Moore* the court denied a fee request because the attorney sought *inter alia* a hidden profit by outsourcing legal work at a flat rate and then seeking fees at the EAJA hourly rate based on standardized time entries for services he did not actually perform. *Moore*, slip op. at 4–5. Unlike the applicant in *Moore*, Sandoval fully disclosed in his fee application that Bohr and Welkley had provided the bulk of the services for which he seeks compensation. *See* P.App. Ex. B, Weisbrod Decl., Bohr Decl., and Welkley Decl. The Commissioner acknowledges this disclosure, D. Resp. at 2, but complains that Sandoval has not revealed the nature of the relationship between Bohr's office and Weisbrod's law firm, *id.*, and requests that the court order Sandoval to supplement his application "to include a full disclosure of the terms of the contract between [Weisbrod's] firm and [Bohr's] office, including the compensation arrangement, so that the Court and the Commissioner can determine whether or not the agreement creates a profit-making element, which is contrary to the spirit of the EAJA." *Id.* at 3. In Weisbrod's affidavit in support of Sandoval's reply brief, he states clearly what Sandoval's fee application suggests: Weisbrod employed Bohr to perform substantive briefing services, and Bohr hired Welkley to prepare parts of the brief that could be completed initially by a paralegal, under attorney supervision. In his reply brief, Sandoval states that Bohr, not Weisbrod, "receives the full EAJA fee that is awarded for her and her paralegal's services, rather than a fixed amount, per her agreement with attorney of record Weisbrod." P. Rep. Br. at 4.[5] Therefore, unlike *Moore*, Weisbrod is not seeking a hidden profit or windfall and Sandoval did not file a misleading fee application. This case is more like *Swilling v. Apfel*, No. 3:97–CV–1492–G (N.D.Tex. Mar. 9, 1999) (Stickney, J.), in which Judge Stickney awarded fees to a plaintiff for whom Weisbrod was the attorney of record and Bohr provided outsourced brief writing services. Slip op. at 6.

Accordingly, the court overrules the Commissioner's objection to Sandoval's fee request on this basis and denies his request for further disclosure of the details of Weisbrod's relationship with Bohr and her relationship with Welkley.

**C**

When Sandoval's fee application is analyzed under the correct legal framework, the Commissioner's multiple arguments against an award of any fees for the services provided by Bohr and Welkley fall away. Therefore, the court will begin by explaining the proper analytical construct

---

4. The Commissioner's skepticism may stem from other fee applications to which he objected on the ground that Weisbrod did not disclose the individual who performed the legal services. *See* D. Resp. at 2 (citing cases).

5. The Commissioner states in his response "that in all likelihood, [Bohr] has already been compensated for her services by [Weisbrod]." D. Resp. at 6. In light of the reply brief, this assertion lacks merit.

and will address only the specific objections that merit individual discussion.

### 1

■ The EAJA provides in 28 U.S.C. § 2412(d)(1)(A) that

[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* (Supp.1999). Section 2412(d)(2)(A) states, in pertinent part, that

"fees and other expenses" includes ... reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)[.]

*Id.* (Supp.1999). Weisbrod is Sandoval's attorney of record and is admitted to practice in the Northern District of Texas. Weisbrod opted to outsource certain of the legal services that he provided to Sandoval by contracting with Bohr to provide brief writing assistance. Bohr, in turn, contracted with Welkley to provide paralegal services in preparing the summary judgment briefs. Absent contrary record evidence, the court holds that the attorney-client relationship in this case is between Weisbrod and Sandoval. *See* Weisbrod

Aff. ¶ 6 ("I employed [Bohr] ... as part of the litigation team in this case, to assist me in preparing the brief[s]."). Bohr is correctly viewed as an attorney acting under Weisbrod's supervision, and Welkley is a paralegal working under the immediate supervision of Bohr and the ultimate superintendence of Weisbrod.

The Commissioner seeks to bar any recovery for services provided by Bohr or her contract paralegal on the ground that Bohr is not admitted to practice in this court, to the State Bar of Texas, or *pro hac vice* in this case. He points to nothing in this court's rules that prohibits an attorney of record who is admitted to practice in this court, whose signature on pleadings renders him subject to Fed.R.Civ.P. 11(c) sanctions, whose appearance exposes him to attorney discipline under N.D. Tex. Civ. R. 83.8(b), and who in fact functions as an attorney for his client, from contracting with another attorney, who is not admitted to practice in this court or in the state of Texas, to provide briefing services for him. The case that the Commissioner cites in his surreply, *Humphrey v. Apfel,* No. 1:98–CV–162–C (N.D.Tex. July 2, 1999) (Koenig, J.), *relief from judgment denied,* (N.D.Tex. Oct. 25, 1999) (Cummings, J.) (order), is factually distinguishable.

In *Humphrey* Judge Koenig denied a fee application (instead, awarding most of the requested fees as "costs" [6]) presented on behalf of a plaintiff whose attorney of record appeared to be little more than a feckless figurehead. *See* slip op. at 4–5. The fees for which the plaintiff applied were "based on legal work done, not by Plaintiff's attorney of record ... but by ... an attorney based in Oberlin, Ohio" and a legal assistant in the Ohio attorney's firm. *Id.* at 2. In fact, the plaintiff did not even seek compensation in the fee application for the services of his own attorney of record. *Id.* Moreover, the plaintiff had an attorney-client relationship with the Ohio attorney and entered into a "Social Security Fee Agreement" with him. *Id.* at 3.

---

**6.** The court does not suggest that it agrees with this approach.

Judge Koenig held that where the Ohio attorney was clearly representing the plaintiff, he was obligated to seek leave to appear *pro hac vice* or to designate the Texas attorney of record as local counsel. *Id.* at 3–4.

Were the court persuaded, as was Judge Koenig in *Humphrey,* that Weisbrod was simply an automaton—a legal conduit through whom Bohr was attempting to practice in this court without seeking admission to the Bar or *pro hac vice*—it undoubtedly would halt such a subterfuge. As Judge Koenig held, "[t]he requirement of appearing *pro hac vice* . . . ensures that the Court has member of its bar, and under its general control, to be accountable in the event of abuse of process, disciplinary matters, and other infractions." *Id.* at 4 (citing *Sanders v. Russell,* 401 F.2d 241, 245–47 (5th Cir.1968)). But the record in the present case does not support such a finding, and the court has no basis to hold that Bohr is attempting to represent Sandoval directly, in the guise of Weisbrod.

Nor has the Commissioner demonstrated that Weisbrod has violated a Texas professional standard—adopted by this court by local rule [7]—or that Bohr has engaged in the unauthorized practice of law in this state. The Commissioner's single pertinent assertion is found in his sur-reply, D. Surreply at 6–7, in which he merely questions whether Weisbrod may have violated a Texas Disciplinary Rule of Professional Conduct because there is no evidence that Weisbrod and Bohr gave notice, or obtained client consent, before dividing a fee. *See* Tex.R. Disciplinary Prof'l Conduct 1.04(f), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G. app. A (West 1998) (Tex. State Bar R. art. X, § 9) (hereafter, "Tex. Disciplinary R."). But as Sandoval points out in his final reply, disclosure is not required where, as here, there is no adverse financial impact on the client. P. Final Rep. at 8 (citing Tex. Disciplinary R. 1.04(f), comment 10).

The court's own research has disclosed neither a violation of Texas law nor a basis to conclude that Bohr has engaged in the unauthorized practice of law. So far as the record in this case shows, Bohr provided briefing services to another attorney, not legal advice directly to a client.

3

■ The Commissioner contests Sandoval's fee application based on two arguments that are disparate in principle. The first pertains to whether the attorneys who provided legal services on plaintiff's behalf complied with laws and regulations concerning the practice of law before this court or in this state. This is a matter that falls squarely within the province of the court and its judicial officers. Not only is it dubitable that the Commissioner should play any role in this area,[8] it is not immediately apparent why he would invoke attorney standards of practice to preclude a social security claimant from recovering attorney's fees under the EAJA, the purpose of which "is to encourage private litigants to seek review of unreasonable government conduct or to vindicate their rights by challenging agency actions that they would otherwise comply with to avoid litigation costs." *Squires–Allman v. Callahan,* 117 F.3d 918, 921 (5th Cir.1997) (addressing supplemental security income disability benefits) (quoting *Milton v. Shalala,* 17 F.3d 812, 815 (5th Cir.1994)).

**7.** In civil cases, the court has adopted the Texas codes, rules, and standards of professional conduct through the definition of "unethical behavior" in N.D. Tex. Civ. R. 83.8(b)(3), which "includes any conduct that violates any code, rule, or standard of professional conduct or responsibility governing the conduct of attorneys authorized to practice law in the State of Texas." *See* N.D. Tex. Civ. R. 83.8(e).

**8.** The court recognizes that there may be cases in which the Commissioner's counsel believes she is obligated as a member of the Bar to report professional misconduct. *See, e.g.,* Tex. Disciplinary R. 8.03. This obligation, however, devolves upon counsel in her role as an attorney, not upon the Commissioner in his capacity as a litigant.

The second argument relates to whether the plaintiff is seeking reasonable attorney's fees. This area unquestionably is one in which the Commissioner (who in part acts on behalf of taxpayers) has a legitimate interest. It focuses, however, on the merits of the plaintiff's fee application, not on whether counsel have complied with court or state standards of practice. The answer to the Commissioner's apparent desire to reign in fee requests that are unsubstantiated, include phantom services, are excessive, or that confer a windfall lies in a proper application of the EAJA itself. *See Commissioner, INS v. Jean*, 496 U.S. 154, 163, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (EAJA fee application case) ("Exorbitant, unfounded, or procedurally defective fee applications—like any other improper position that may unreasonably protract proceedings—are matters that the district court can recognize and discount."). So far as the Commissioner should be concerned, regardless whether legal and paralegal services are provided solely by the attorney of record or with the assistance of in- or out-of-state contract attorneys and paralegals, the fees requested and awarded under the EAJA must be for services that are properly documented, actually rendered, and compensated at reasonable rates (as measured by the prevailing market and capped in amount according to statutory limits).

It is the process of careful judicial scrutiny of fee applications, not inquiries into bar membership, that best ensures that the salutary purposes of the EAJA are realized. As Judge Stickney wrote in *Opry v. Apfel*, No. 3:99–CV–0197–X (N.D.Tex. Oct. 8, 1999) (Stickney, J.) (order):

> [E]ven if Plaintiff's counsel had used the services of an outside contractor, the Court finds this fact irrelevant in determining whether Plaintiff is entitled to fees and expenses under the EAJA. The purpose of the EAJA is to eliminate any financial disincentive the average person might have in challenging an unreasonable government action. Use of a brief-preparation service does not mean that the attorney of record had nothing to do with the matter, it simply signifies that other resources were utilized by the representing attorney for services which Plaintiff had to pay.

*Id.* at 3 (citations omitted). Courts and states have ample power and incentive to deal with attorneys who violate standards of practice, without unnecessarily injecting those issues into the process of awarding attorney's fees under the EAJA.

Moreover, the Commissioner's objections are questionable when carefully analyzed in the context of an EAJA fee application. He concedes that Bohr is a specialist in social security appeals.[9] Given the comparatively modest cap[10] on EAJA fees—which means that specialists cannot bill at significantly higher rates than might be expected of non-specialists—it would appear to be in the government's interest for disability claimants to be represented by persons whose experience and expertise permits them to complete necessary legal services in less time than might otherwise be required. When evaluating potentially time intensive processes such as research and brief writing—compared, for example, to administrative functions—it is often difficult to say that an attorney should have expended fewer hours than he did or to quantify the part that is excessive. When services are performed by a specialist, the person's professional expertise can serve as a *de facto* governor against excessive fees. And it should matter little to the Com-

---

9. *See* D. Surreply at 4 (referring to "Bohr's impressive legal career" and to Weisbrod and Bohr as "two specialists").

10. Weisbrod, a social security disability law specialist of more than 20 years experience, bills his time at hourly rates of $175.00 to $225.00 in those exceptional cases that he does not take on a contingent fee. Weisbrod Aff. ¶¶ 2–3. At the high end of the range, his hourly rate approaches almost double the EAJA statutory cap.

missioner whether Weisbrod performed a service himself or delegated it to Bohr, provided that Weisbrod and Bohr in fact performed the services for which fees are claimed, *cf. Moore*, that they did not engage in wasteful duplication, and that Bohr's time expenditures were reasonable.[11]

Similarly, it is apparent from the record that Welkley performed services—organizing the case, summarizing the administrative proceedings and medical evidence, and preparing the procedural history, statement of the case, and summary of medical evidence—that might otherwise have been undertaken by Weisbrod at a higher hourly rate, while consuming substantially the same amount of time. A lawyer is not necessarily able to prepare the procedural history, statement of the case, and summary of medical evidence in less time than it takes an experienced paralegal to do so.[12]

The Commissioner also relies on § 2412(d)(1)(B)[13] to preclude any recovery for Bohr's services. This subsection requires that an application include "an itemized statement from any attorney ... representing or appearing in behalf of the party." The Commissioner contends that Bohr is merely a contractor who has not satisfied the EAJA requirement that she appear on behalf of a party and, consequently, cannot claim attorney's fees. For the reasons the court has already explained, however, Weisbrod's appearance on Sandoval's behalf is sufficient to satisfy § 2412(d)(1)(B).[14]

### D

■ The court next considers how the fees for Bohr's and Welkley's services should be calculated. The Supreme Court's interpretation in *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), of an analogous fee-shifting statute, 42 U.S.C. § 1988, supports the proposition that the fees of contract attorneys and paralegals are separately compensable (*i.e.*, not part of Weisbrod's overhead), provided they would be separately billed in the relevant market. *Cf.* 28 U.S.C. § 2412(d)(2)(A) (providing for fee award "based upon prevailing market rates for the kind and quality of the services furnished").[15]

---

**11.** *See* D. Resp. at 6 (stating that Commissioner does not dispute that "Bohr may have performed valuable services in conjunction with this case").

**12.** While this assumes that the paralegal's training permits her to understand, as does a lawyer, which facts have legal significance and should be summarized, the record in this case shows that Welkley has extensive experience performing paralegal work in social security disability litigation.

**13.** 28 U.S.C. § 2412(d)(1)(B):

A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that

the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

**14.** For the same reason, the court rejects the Commissioner's reliance on *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), for the proposition that attorney's fees under fee-shifting statutes are not available absent a true attorney-client relationship. *See Swilling*, No. 3:97–CV–1492–G, slip op. at 5 (distinguishing *Kay*). Weisbrod is Sandoval's attorney of record and they entered into an attorney-client relationship. Bohr and Welkley supplied services to Weisbrod as part of his representation of Sandoval.

**15.** The Commissioner attempts to distinguish *Missouri* on the ground that the attorney in that case had a supervisory position over the paralegal and that there is no evidence in the

In *Missouri* the Court addressed *inter alia* whether under § 1988 a prevailing party could recover fees for the services of law clerks and paralegals [16] at the market rates for their services rather than at their cost to the attorney. *Missouri*, 491 U.S. at 284, 109 S.Ct. 2463. Interpreting § 1988's statutory language—which provides for "a reasonable attorney's fee as part of the costs"—the Court held that a "reasonable attorney's fee" was not limited to work performed personally by members of the Bar but also referred to "a reasonable fee for the work product of an attorney." *Id.* at 285, 109 S.Ct. 2463. "Thus, the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit." *Id.* The Court held that the proposition was self-evident that § 1988 should compensate for the cost of law clerks and paralegals. *Id.*

The Court then addressed whether the services of such persons should be compensated at market rates. Noting that "[t]he statute specifies a 'reasonable' fee for the attorney's work product," *id.*, and that the Court had consistently looked to the marketplace to guide what is reasonable, *id.* at 285–86, 109 S.Ct. 2463, the Court held that if the prevailing practice in a community is to bill law clerk and paralegal time separately at market rates, fees awarded the attorney at market rates for attorney time would not be fully compensatory if a court refused to compensate for hours billed by law clerks and paralegals or did so only at cost. *Id.* at 286–87, 109 S.Ct. 2463. If a market did not customarily bill separately for such fees, a fee award that did so would be too high. *Id.* at 287, 109 S.Ct. 2463.

The Court rejected the argument that compensation for law clerks and paralegals at rates above cost would yield a windfall for the prevailing attorney. The Court cited the hourly rate applied to law firm associate attorneys, noting that firm partners did not realize a windfall or obtain improper compensation under § 1988 merely because the associate attorney's fees exceed the cost of his services. *Id.* The determining factor for whether law clerk and paralegal fees can be compensated at separately-billed market rates depends on the practice of the relevant market. *Id.* at 288. The Court also noted that encouraging the use of lower cost paralegals rather than attorneys reduces the costs of litigation and furthers the policies that underlie the civil rights statutes. *Id.*

■ The reasoning of *Missouri* supports awarding Sandoval fees incurred in outsourcing attorney and paralegal work in the context of the EAJA. Like § 1988, which the Supreme Court interpreted to be controlled by market rates, the EAJA provides that the court shall award a reasonable fee based upon prevailing market rates. *See* 28 U.S.C. § 2412(d)(1)(A) and (d)(2)(A). The Commissioner does not argue that in the Dallas market, outsourced attorney and paralegal fees are absorbed as part of the attorney of record's overhead. Under the EAJA, the touchstone for determining a fee award is reasonableness, calculated according to the prevailing market rates for the kind and quality of services furnished, not whether the services were performed by an attorney or paralegal employed by the prevailing party's attorney of record. The market determines the rate at which the fee is awarded, subject to the statutory requirement that

present case that Weisbrod supervised or controlled Bohr's activities. D. Surreply at 3–4. The court disagrees. Weisbrod signed the briefs in this case and retained complete control over what was prepared and filed on Sandoval's behalf.

**16.** The Supreme Court referred to law clerks and paralegals collectively as "paralegals." *See id.* at 284, 109 S.Ct. 2463. For clarity, this court refers to them separately unless the context otherwise requires.

the fee be reasonable and to the $125 per hour rate cap that can only be exceeded in the specific circumstances specified by the EAJA.

The Commissioner contends in the alternative that Bohr should not be compensated at attorney-level rates but should be treated as a paraprofessional under Weisbrod's supervision. The court disagrees where, as here, there is no suggestion that attorneys in the Dallas market would bill clients for a contract attorney's services in this manner. Nor, for the same reason, can the court accept the Commissioner's contention that Welkley's services must be deemed part of Bohr's costs.

The court therefore holds that the services that Bohr and Welkley provided should be compensated at reasonable hourly rates, determined according to the prevailing market.

### III

The Commissioner next challenges Sandoval's application to recover photocopying costs. He maintains that Sandoval's request for $57.00 in such expenses is not compensable because he is proceeding in this case *in forma pauperis* and 28 U.S.C. § 1915(f)(1) prohibits an award of court costs against the United States. The Commissioner contests Sandoval's application for the additional sum of $70.50 in photocopying costs requested in his reply brief, *see* P. Rep. Br. at 18, based on Sandoval's *in forma pauperis* status and

on the ground that he has failed adequately to support the request.

Although 28 U.S.C. § 2412(a)(1)[17] permits a prevailing party to recover costs, and § 2412(d)(1)(A) enables a prevailing party to recover fees and expenses, unless a statute specifically provides otherwise, both subsections are expressly subject to such a statute. Because Sandoval obtained leave to proceed *in forma pauperis* in this case, his ability to recover costs is governed by 28 U.S.C. § 1915(f)(1), which provides:

> Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

At least two circuits have held that § 1915(f)(1) excuses the United States from liability for costs in a case in which leave to proceed *in forma pauperis* has been granted. *See Maida v. Callahan*, 148 F.3d 190, 193 (2d Cir.1998) (per curiam), and *James v. Quinlan*, 886 F.2d 37, 40 (3d Cir.1989) (addressing § 1915(e), which was later recodified in substantially the same language as § 1915(f)(1)) ("However, § 1915(e) leaves the government fully protected against costs in *in forma pauperis* cases.").[18]

---

**17.** 28 U.S.C. § 2412(a)(1):

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

**18.** There is an alternative to this interpretation. · Section 1915(f)(1) can be construed to mean that the United States cannot be held liable for costs taxed against a losing *in forma pauperis* litigant, even though the government initially paid those costs on the litigant's behalf or waived prepayment, rather than to mean that the United States can never be held liable for taxable costs, *even when the United States is the losing litigant.*

28 U.S.C. § 1915(a)(1) provides:
Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who

Sandoval acknowledges that § 1915(f)(1) protects the Commissioner from an award of certain costs. *See* P. Rep. Br. at 15. He maintains, however, that the reference in this section to "the costs thus incurred" is only to certain kinds of costs—the filing fee, the costs of printing the record or transcript, and the service of process fees—which are the only costs expressly mentioned in § 1915. *See* P. Rep. Br. at 15–16. He contends that because photocopying costs do not fall within any of these categories, § 1915(f)(1) does not impede his right to recover them under the EAJA.

■ To decide this issue, the court must begin by interpreting the term "costs" used in § 1915(f)(1). In *Flint v. Haynes*, 651 F.2d 970 (4th Cir.1981), the Fourth Circuit addressed § 1915(e), the prior version of § 1915(f)(1), and held that the assessment of costs "as in other cases"[19] is generally controlled by Fed.R.Civ.P.

> submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

*Id.* Section 1915(a) and (c) specify the fees and costs that an *in forma pauperis* litigant need not prepay or that the United States will pay on the litigant's behalf. Section 1915(f)(1) provides, in pertinent part, that "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus incurred." This subsection can reasonably be interpreted to do nothing more than clarify, first, that one who has been permitted to proceed without prepaying fees and costs can still be held liable for them at the end of the case, *see, e.g., Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir.1997) ("[A]ll § 1915(a) does for any litigant is excuse the *pre*-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able."); and, second, that despite the fact that the United States has paid (or waived prepayment of) fees and costs on the litigant's behalf, it cannot be liable for any costs later taxed against the *in forma pauperis* litigant.

Although interpreting § 1915(f)(1) in this manner would permit Sandoval to recover

54(d).[20] *Id.* at 973. The court therefore disagrees with Sandoval that the costs against which § 1915(f)(1) insulates the United States from liability include only those mentioned in other subsections of § 1915. Indeed, if the intent of § 1915(f)(1) is to protect the United States against costs in *in forma pauperis* cases despite the waiver of sovereign immunity effected by the EAJA, *see James*, 886 F.2d at 40, it would be anomalous to do so only in the constricted manner that Sandoval posits.

■ The Supreme Court has held that "[28 U.S.C.] § 1920 defines the term 'costs' used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). In the Fifth Circuit, "the costs of general copying ... are among the expenses enumerated in § 1920." *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 556 & n. 17 (5th Cir.1987) (footnotes omitted). It is also

> photocopying costs and would excuse the court from undertaking the more extensive analysis set out below, the court will not do so today. First, Sandoval does not challenge the proposition that § 1915(f)(1) insulates the Commissioner from liability for certain costs. Second, the Second and Third Circuits have already reached a contrary conclusion from the one the court now suggests.

19. Section 1915(f)(1) refers to costs "as in other proceedings," but this change appears to be immaterial to the present inquiry.

20. Rule 54(d)(1) provides:

> Costs Other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

*See Culp v. Zaccagnino*, 2000 WL 35861, at *1 (S.D.N.Y. Jan.18, 2000) (applying Rule 54(d) in context of § 1915(f)(1)); *Brodie v. Pressley*, 1999 WL 691960, at *2 (S.D.N.Y. Sept.7, 1999) (same).

the rule in this circuit that if an expense is listed in § 1920, it may be recovered only if allowed by that section. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1101 (5th Cir.1982). In *Copper Liquor* the panel held:

> Read broadly, some of the cases awarding litigation expenses suggest that these items should be recoverable. This view eliminates the significance of § 1920 whenever an attorneys' fees award is authorized. It is more logical to give full effect to § 1920 by looking to the statute as the exclusive means of recovering the basic categories of costs listed in it. Adopting this view, we hold that expenditures for those categories of expenses listed in 28 U.S.C. § 1920 may be recovered only if they are allowed by that section. In that event, the expenditures are, of course, costs. Thus, the cost of copies is recoverable only if allowed by 28 U.S.C. § 1920(3). Any excess costs incurred for copies must be borne by the litigant or counsel. The other expenditures not listed in § 1920 reasonably incurred in connection with this litigation are recoverable as attorneys' fees.

*Id.* at 1100–01 (footnotes omitted). Accordingly, working backward from circuit precedent, the court holds that photocopying expenses are recoverable as provided by § 1920, § 1920 defines the costs included in Rule 54(d), Rule 54(d) generally controls what costs are included in § 1915(f)(1), and § 1915(f)(1) prohibits the United States from being held liable for such costs. The court therefore holds that under § 1915(f)(1), the Commissioner is not liable for Sandoval's photocopying expenditures because these are "costs" within the meaning of that subsection.

Without explicitly addressing a possible distinction between § 2412(a) and § 2412(d)(1)(A), Sandoval appears to rely on cases decided under the latter subsection to argue that his photocopying expenditures are compensable despite his *in forma pauperis* status. In essence, he ar-

gues that the costs of photocopying are "expenses" within § 2412(d)(1)(A) rather than "costs" within § 2412(a)(1) (and, in turn, § 1920). *See* P. Rep. Br. at 16–18. In other circuits it could perhaps be argued that expenses for photocopying are compensable under the EAJA as § 2412(d)(1)(A) expenses. *See, e.g., Aston v. Secretary of Health & Human Servs.*, 808 F.2d 9, 12 (2d Cir.1986) (holding *inter alia* that photocopying costs are recoverable under the EAJA as reasonable expenses defined in § 2412(d)(2)(A)). In the Fifth Circuit, however, taxable costs permitted by § 1920 are to be recovered according to that statute. *See Copper Liquor*, 684 F.2d at 1101. · Because § 2412(a)(1) explicitly refers to § 1920–type costs, § 2412(d)(1)(A) expenses do not include such expenditures. *See id.* (referring to recovery of expenses in addition to any costs awarded pursuant to § 2412(a)). Moreover, if the court were to allow Sandoval to recover photocopying expenditures under § 2412(d)(1)(A), it would fail to give full effect to § 1915(f)(1) by imposing liability on the United States for a cost that falls within that section.

■ There are two other principles that support the court's interpretation of § 1915(f)(1) and § 2412. First, the EAJA represents a partial waiver of governmental sovereign immunity. As such, it must be interpreted strictly. *Texas Food Indus. Ass'n v. United States Dep't of Agric.*, 81 F.3d 578, 580 (5th Cir.1996). Second, although for purposes of the present case the court is interpreting § 1915(f)(1) in the context of a bar against awarding photocopying costs under the EAJA, the interpretation of the term "costs" that the court adopts should not change according to context. If the court were to interpret "costs" narrowly to allow Sandoval to recover photocopying expenditures, it would be constrained to hold in another case, for example, that an *in forma pauperis* plaintiff could not be assessed photocopying costs but instead could be required to pay only

those costs expressly mentioned in other parts of § 1915.

Accordingly, the court denies Sandoval's request for photocopying costs.[21]

## IV

■ The court next decides whether Sandoval is entitled to recover attorney's fees at the rate of $131.25 per hour under the EAJA's cost-of-living adjustment.

Sandoval requests that the attorney services rendered by Weisbrod and Bohr be compensated at the hourly rate of $131.25 based on a cost-of-living adjustment of $6.25 per hour (5%) over the statutory maximum rate of $125.00. He bases this request on the Consumer Price Index for Dallas–Ft. Worth, Texas ("DFW CPI").[22] The Commissioner contends on various grounds that the increase is unwarranted.

Following the Fifth Circuit's decision in *Baker v. Bowen*, 839 F.2d 1075 (5th Cir. 1988), Judge Sanders ordered that upon request and proper proof by a party who is entitled under the EAJA to an attorney's fee in a case involving titles II and XVI of the Social Security Act, the fee shall be subject to cost-of-living fee enhancements. *Baker v. Bowen*, No. 3:82–CV–0095–G, order at 2 (N.D.Tex. Mar. 16, 1989) (Sanders, J.). The order expressly provides that it applies prospectively to all future applications until the order is modified by subsequent court order. *Id.* at 3. Judges in the Dallas Division of this court have recently awarded fees at hourly rates equal to or greater than $131.25.[23] Therefore, the court will compute Sandoval's attorney's fees request for Weisbrod's services at the hourly rate of $131.25.

The court holds, however, that Bohr's compensation must remain capped at $125.00 per hour. Sandoval has not introduced any evidence concerning the cost of living in the market in which Bohr practices. *See* P.App. Ex. A (addressing only DFW CPI). Because he bears the burden of proof on this issue, his failure to introduce sufficient evidence warrants denying an enhancement to the statutory fee. *See Weakley v. Bowen*, 803 F.2d 575, 579 (10th Cir.1986).

---

**21.** Even had the court concluded that such costs were compensable, it would deny Sandoval's request for $70.50 of additional copying costs generated in litigating the EAJA claim. He has not provided the court with a sufficient explanation of this expenditure. In his affidavit accompanying his reply brief, Weisbrod states the additional costs were incurred for the EAJA reply, Weisbrod Aff. ¶ 10, but he fails to provide the specific number of pages copied or the cost per page regarding the $70.50 expense. Even after the Commissioner objected in his surreply based on an absence of basic information, Sandoval did not provide specific data in his final reply. *See McDade v. Apfel*, 1999 WL 1073004, at *2 (N.D.Tex. Nov.24, 1999) (Fitzwater, J.) (denying request for photocopying expenses where claimant had "not provided even the most basic information concerning how many copies she made and at what rate per page she is seeking reimbursement").

**22.** Weisbrod arrives at this amount by multiplying $125.00 (the EAJA statutory rate) by 1.05. The multiplier is based on a 5% increase in the DFW CPI since the amendment of the EAJA in 1996. *See* P.App. at 4 n.1. The

Commissioner does not challenge the accuracy of Weisbrod's DFW CPI calculation.

**23.** *See, e.g., Paulick v. Apfel*, No. 3:99–CV–0945–X (N.D.Tex. Oct. 20, 1999) (Kaplan, J.) ($131.25 hourly rate) (agreed order); *Williams v. Apfel*, No. 3:98–CV–0386–G (N.D.Tex. Sept. 3, 1999) (Boyle, J.) ($132.75 hourly rate); *Flores v. Apfel*, No. 3:98–CV–2714–T (N.D. Tex. June 30, 1999) (Maloney, J.) ($132.75 hourly rate); *Taylor v. Apfel*, No. 3:98–CV–2752–P (N.D. Tex. June 9, 1999) (Solis, J.) ($132.75 hourly rate); *Horton v. Apfel*, No. 3:98–CV–1656–F (N.D.Tex. Mar. 24, 1999) (Solis, J.) ($132.75 hourly rate).

The Commissioner cites *Carter v. Apfel*, No. 4:99–CV–0240–D (N.D.Tex. Oct. 13, 1999) (Fitzwater, J.) (agreed order); *Clay v. Apfel*, No. 3:97–CV–3032–D (N.D.Tex. Sept. 14, 1999) (Fitzwater, J.) (agreed order); and *Hambrick v. Apfel*, No. 3:97–CV–1262–D (N.D.Tex. Sept. 22, 1998) (Fitzwater, J.), for the proposition that the undersigned has made fee awards that did not include cost-of-living adjustments. D. Resp. at 10 n.5. Two of these orders, however, were agreed, and there is no indication that the fee issue was disputed in the third.

## V

The Commissioner maintains that Sandoval's fee request is excessive and warrants a 25% across-the-board reduction because Weisbrod's time entries are billed in quarter-hour increments. He requests that the court reduce Weisbrod's compensable hours from 14 to 10.5. D. Resp. at 12.

The Commissioner cites several cases in support of an across-the-board reduction for billing in this manner, *see* D. Br. at 10–11, but these decisions, while critical of quarter-hour time entries, do not persuade the court that billing by this method is excessive *per se.* *Cf. Martin v. Heckler,* 754 F.2d 1262, 1265 (5th Cir.1985) (approving fees and expenses supported by detailed contemporaneous itemization, broken down by quarter-hour, where Secretary did not dispute reasonableness of amounts requested). The Commissioner has not adduced evidence that quarter-hour timekeeping is unreasonable of itself or is no longer an accepted practice in the relevant legal market. Absent such proof, the court declines to apply a plenary reduction to Weisbrod's fees.

The court does hold, however, that billing in quarter-hour intervals can be inadequate to demonstrate that the fee for the requested time is reasonable. The court finds below that the time expended for certain of the services for which Sandoval seeks compensation is unreasonable, and is in part not compensable, because 15–minute time entries appear excessive for the services described. Therefore, rather than apply a percentage reduction to the fees requested, the court will reduce specific fees that are unjustified temporally.

## VI

The Commissioner argues in the alternative that the amount of Sandoval's application must be reduced because he has included tasks that are not compensable under the EAJA.

## A

To decide an appropriate attorney's fee award, the court must first calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Rutherford v. Harris County, Tex.,* 197 F.3d 173, 192 (5th Cir.1999) (citing *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir.1997)). In an EAJA case, the reasonable fee is "based upon prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(2)(A). The court must then determine whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and after addressing the factors of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Id.* (citing *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 822 (5th Cir.1997)); *see Jean v. Nelson,* 863 F.2d 759, 773 (11th Cir.1988) ("the factors enumerated in *Johnson* are to be considered in calculating EAJA fees"), *aff'd,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).[24] Sandoval bears the

---

**24.** The familiar *Johnson* factors are (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether

that relationship was long-standing; and (12) awards made in similar cases. *Johnson,* 488 F.2d at 717–19.

As the Fifth Circuit explained in *Walker v. United States Dep't of Housing & Urban Dev.,* 99 F.3d 761 (5th Cir.1996):

The first factor already is included in the lodestar, and the district court must be careful ... not to double count a *Johnson* factor already considered in calculating the lodestar[.] The Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors, and we have held that

burden of proving that the hours claimed were "reasonably expended on the litigation." *See Alberti v. Klevenhagen,* 896 F.2d 927, 933–34, *modified in part on other grounds,* 903 F.2d 352 (5th Cir.1990) (on rehearing); *see also Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' "). The fee thus determined cannot exceed the statutory cap, except as expressly permitted by the EAJA.

**B**

The Commissioner maintains that some of the fees that Sandoval requests (15 time entries) are unreasonable. D. Resp. at 12–13. Sandoval concedes that three challenged entries (.75 hours in total) for receipt and review of correspondence from the District Clerk on September 2, 1998,[25] February 11, 1999, and March 22, 1999 are in error and he has reduced his fee request accordingly. P. Rep. Br. at 22. The court agrees with the Commissioner that the other 12 challenged entries are unreasonable and warrant reducing the lodestar.

■ Most of the tasks at issue involved receipt and review of simple notices, motions, and court orders that were less than one page long. *See, e.g.,* Sept. 16, 1998 (Commissioner's notice of entry of appearance of counsel); Nov. 16, 1998 (order granting extension of time); Dec. 16, 1998 (order granting extension of time); Dec. 16, 1998 (order requiring plaintiff to file motion for summary judgment); Jan. 14, 1999 (order granting extension of time); Feb. 12, 1999 (order granting extension of

time); Apr. 15, 1999 (order granting extension of time); and July 2, 1999 (order and judgment). The court finds that billing one quarter-hour to review each of these short and basic documents is excessive. The court reduces the three hours billed for these 12 remaining challenged entries by 50%, lowering the fee request by 1.5 hours.

The Commissioner also objects to Sandoval's request for one hour of compensation for "[l]egal research regarding state agency medical consultants; memo to file regarding state agency medical consultants" on April 13, 1999. *See* D. Resp. at 15; Weisbrod Decl. Sch. Hours. The court's review of the record discloses that Weisbrod actually recorded only one-half hour of compensation for this task. *See* Weisbrod Decl. Sch. Hours. In his reply brief, Sandoval explains that this research was part of Weisbrod's preparation of plaintiff's reply brief filed on May 4, 1999. *See* P. Rep. Br. at 25. The court finds that one-half hour is reasonable.

**VI**

■ Sandoval applies for 28.25 hours of attorney's fees (11.75 hours for Weisbrod and 16.5 hours for Bohr) for services rendered litigating his EAJA claim. Under the EAJA, fees incurred litigating a fee application are compensable. *See Powell v. Commissioner,* 891 F.2d 1167, 1170–71 (5th Cir.1990) (26 U.S.C. § 7430 decision based on EAJA precedent). Having otherwise held that Bohr's services are compensable, and having carefully considered, under the relevant standards, the

[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts.... An enhancement based on the eighth factor is appropriate only when the fee applicant can demonstrate that it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result[.] ... The seventh factor is subsumed in the number of hours reasonably expended.

*Id.* at 771–72 (citations, quotations, and footnote omitted). The Supreme Court has barred any use of the sixth factor. *Rutherford,* 197 F.3d at 193 (citing cases).

**25.** Sandoval refers in his reply brief to September 9, 1998, *see* P. Rep. Br. at 22, but the Commissioner's objection is directed to a September 2, 1998 entry, *see* D. Resp. at 12, which appears to be the one at issue. *See* Weisbrod Decl. Sch. Hours.

fees that Sandoval seeks for additional services that Weisbrod and Bohr performed in litigating the fee application, the court awards Sandoval compensation for 28.25 additional hours at the rate of $131.25 per hour for Weisbrod's time and $125.00 per hour for Bohr's time.

\* \* \* \* \* \*

In sum, the court grants Sandoval's fee application to the extent of awarding him the total sum of $10,204.38 (Weisbrod: 11.75 hours (merits) + 11.75 hours (fee application) × $131.25 per hour = $3,084.38) + (Bohr: 29.3 hours (merits) + 16.5 hours (fee application) × $125.00 per hour = $5,725.00) + (Welkley: 23.25 hours × $60 per hour = $1,395.00). The court has filed a judgment today. *See* Rule 54(d)(2)(C) (requiring that court enter separate judgment for attorney's fee award).

SO ORDERED.