Filed: July 12, 2011

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 10-1113**
6:08-cv-00546-GRA

───────────────

ANDRIA PRIESTLEY,

              Plaintiff - Appellant,

        v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

              Defendant - Appellee,

        and

SOCIAL SECURITY ADMINISTRATION,

              Party-in-Interest.

───────────────

**No. 10-1160**
3:07-cv-03785-JFA-JRM

───────────────

BARBARA PETER,

              Plaintiff - Appellant,

        and

SOCIAL SECURITY ADMINISTRATIVE RECORD,

              Party-in-Interest,

        v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

              Defendant - Appellee.

**No. 10-1176**
2:07-cv-01621-JFA

ZELLA DAVIS,

        Plaintiff - Appellant,

    v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

        Defendant - Appellee.

O R D E R

The Court amends its opinion filed July 7, 2011, as follows:

On page 19, footnote 3, line 6 -- a parenthesis is added before the word "advocating."

On page 21, last paragraph of footnote 5 carry-over, line 3 -- the citation page number "1118" is corrected to "1181."

For the Court – By Direction

/s/ Patricia S. Connor
        Clerk

2

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDRIA PRIESTLEY,

*Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee,*

and

SOCIAL SECURITY ADMINISTRATION,

*Party-in-Interest.*

No. 10-1113

BARBARA PETER,

*Plaintiff-Appellant,*

and

SOCIAL SECURITY ADMINISTRATIVE RECORD,

*Party-in-Interest,*

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee.*

No. 10-1160

ZELLA DAVIS,

                *Plaintiff-Appellant,*

                v.                                              No. 10-1176

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                *Defendant-Appellee.*

Appeals from the United States District Court
for the District of South Carolina, at Greenville,
Columbia, and Charleston.
G. Ross Anderson, Jr., Senior District Judge;
Joseph F. Anderson, Jr., District Judge.
(6:08-cv-00546-GRA; 3:07-cv-03785-JFA-JRM;
2:07-cv-01621-JFA)

Argued: March 23, 2011

Decided: July 7, 2011

Before NIEMEYER and DAVIS, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded for further
proceedings by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Davis joined. Judge Davis wrote a
separate opinion concurring in part and concurring in the
judgment. Senior Judge Hamilton wrote a separate opinion
concurring in part and dissenting in part.

**COUNSEL**

**ARGUED:** Charles Lee Martin, MARTIN & JONES, Decatur, Georgia, for Appellants. Marvin Jennings Caughman, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF**: Paul T. McChesney, Spartanburg, South Carolina, for Appellants. William N. Nettles, United States Attorney, Beth Drake, First Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina; Dorrelyn K. Dietrich, Special Assistant United States Attorney for the District of South Carolina, John Jay Lee, Acting Regional Chief Counsel, SOCIAL SECURITY ADMINISTRATION, Denver, Colorado, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

The plaintiffs in these three cases prevailed in district court on their appeals from the Social Security Administration's denial of their claims for disability benefits, and then, as prevailing parties, filed motions under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for "fees and other expenses." In the motions, the plaintiffs sought reimbursement for the attorneys fees of Paul T. McChesney, a South Carolina attorney, as well as the attorneys fees of two out-of-state attorneys, who assisted McChesney in writing the briefs and other pleadings submitted to the district court.

While the district court granted the motions for the fees charged by McChesney, it denied the motion for the fees charged by the out-of-state attorneys because they were not licensed to practice law in the District of South Carolina and were not admitted *pro hac vice* in these cases. District of South Carolina Local Civil Rule 83.I.05 authorizes *pro hac*

*vice* admission of out-of-state attorneys "for occasional appearances," but not as a "substitute for regular admission to the Bar of this Court." The out-of-state attorneys, whom McChesney hired to work on the briefs in these cases, had also provided him with similar assistance in dozens of earlier cases. Their work was generally responsible for between 75% and 85% of the fees for which McChesney's clients sought reimbursement under the EAJA. The district court concluded that the out-of-state attorneys' lack of licensure was a "special circumstance" that made reimbursement of their fees "unjust" under the EAJA. *See* 28 U.S.C. § 2412(d)(1)(A).

On appeal, the plaintiffs contend that McChesney's retention of out-of-state attorneys for assistance in brief writing did not preclude reimbursement for their fees under the EAJA, nor did it violate the District of South Carolina's local rules, and therefore, they argue, there were no "special circumstances" to justify denial of the out-of-state attorneys fees.

Even though the District of South Carolina appropriately regulates the practice of law in its court, we conclude that the use of nonadmitted lawyers for brief writing services does not present a "special circumstance" sufficient to deny a fee award as "unjust" under the EAJA. Accordingly, we vacate and remand these cases for reconsideration of the fee applications.

I

Andria Priestley, Barbara Peter, and Zella Davis filed claims for disability benefits with the Social Security Administration, and the Social Security Administration denied each of the claims. These plaintiffs appealed to the district court, successfully challenging the agency's rulings. As prevailing parties, they then filed motions for fees and expenses under the EAJA. Priestly sought reimbursement of $6,661.57; Peter, of $6,083.52; and Davis, of $8,639.62. Supporting the motions, the plaintiffs included the affidavit of their attorney,

Paul T. McChesney, as well as the affidavits of out-of-state attorneys Charles L. Martin and Perrie H. Naides, or, in one case, Martin and paralegal David Tillett, who assisted McChesney in drafting briefs and pleadings for McChesney's review and filing. In the motions, the plaintiffs indicated that the time spent by McChesney accounted for roughly 15% to 25% of the time for which fees were claimed, and the time spent by Martin, Naides, and Tillett accounted for the remainder.

Although McChesney was a South Carolina attorney, admitted to practice law in both the State courts and in the district court, Martin and Naides were not admitted in the State, nor in the district court. Martin, a Georgia lawyer, and Naides, a Pennsylvania lawyer, practice their specialty of briefing Social Security appeals through their firm, Martin and Jones, in Decatur, Georgia. McChesney retained Martin and Naides because of their expertise, and these attorneys assisted McChesney by providing him with research and drafts of briefs and other filings. Martin and Naides never spoke with McChesney's clients, nor with opposing counsel. They limited their involvement to submitting, in draft form, briefs and papers, which McChesney then reviewed, edited, signed, and filed with the court. Martin was occasionally listed on filed documents as "attorney for plaintiff" or "on the brief," and on some of the papers filed, his name was accompanied by an electronic signature. Also, in his affidavits supporting the plaintiffs' applications for fees, Martin stated that he served as "counsel for the plaintiff," while Naides' affidavits stated that she "provided legal services in support of the representation."

Martin and Naides were not admitted to the South Carolina State bar and therefore did not qualify for admission to the bar of the district court. They also suggest that they did not qualify for *pro hac vice* admission because they associated with McChesney too regularly to satisfy the "occasional appear-

ance" requirement. McChesney engaged Martin in dozens of cases over the years since at least 2003.

The Commissioner of Social Security opposed the plaintiffs' motions for fees and other expenses, arguing that because Martin and Naides were neither licensed in South Carolina, nor admitted *pro hac vice*, they had engaged in the unauthorized practice of law when assisting in these cases. The Commissioner claimed that the plaintiffs should not be reimbursed for their work at all, or, alternatively, that reimbursement be only at a reduced rate.*

By separate orders entered in each of the cases before us, the district court granted the motions for attorneys fees to the extent that the plaintiff sought reimbursement for work performed by McChesney, but denied them with respect to reimbursement for work performed by Martin and Naides because they had not been admitted to practice in the District of South Carolina, either permanently or *pro hac vice*. In *Davis*, No. 10-1176, however, the court did grant the motion for fees for work performed by Tillett at a lower "paralegal rate" and also reduced the rate at which McChesney was compensated during his travel time. In support of its orders, the court explained that Martin had a long history of assisting McChesney with Social Security appeals and had previously been

---

*The Commissioner has opposed fees for Martin and Naides in numerous other cases in the District of South Carolina, based on their nonadmission to the bar. In a number of cases, the district judge allowed fee reimbursement in the case before the court but indicated that the out-of-state attorneys should request *pro hac vice* admission in future cases. *See, e.g.*, *Tadlock v. Astrue*, No. 8:06-cv-3610 (D.S.C. Apr. 9, 2009); *Freeman v. Astrue*, No. 0:06-cv-2255 (D.S.C. July 24, 2008). In another case, the district judge rejected the Commissioner's argument but recommended *pro hac vice* admission in future cases "[t]o avoid confusion over this issue." *Pace v. Astrue*, 9:07-cv-546 (D.S.C. May 9, 2008). In still other cases, the district judge characterized the Commissioner's argument as completely unjustified. *See, e.g.*, *Stisser v. Astrue*, No. 3:07-3032 (D.S.C. Mar. 24, 2009); *Clowney v. Astrue*, No. 8:07-cv-856 (D.S.C. Sept. 15, 2008).

warned by other judges in South Carolina to gain admission under the court's local rules, in one form or other, before continuing that work. Martin's violations, the court found, contravened the public policy in favor of attorney licensure and thus presented the "special circumstance" in 28 U.S.C. § 2412(d)(1)(A) that would render fee awards for his and Naides' work "unjust."

From the district court's orders, which denied, for the most part, their motions for reimbursement of fees and expenses, Priestly, Peter, and Davis filed these appeals, which we consolidated by order dated March 23, 2010.

## II

For their main argument, the plaintiffs contend that the district court erred by invoking the EAJA's "special circumstances" exception to deny reimbursement for work performed by the out-of-state attorneys Martin and Naides. They argue that the out-of-state attorneys' work in assisting McChesney did not violate any local rule of the district court and that there is no public policy against a South Carolina attorney hiring out-of-state contract attorneys to assist him in writing briefs. They point to the district court's local rule, which provides that parties in the district "must be represented by *at least one member* of the Bar of this Court who shall sign each pleading, motion, discovery procedure, or other document served or filed in this Court," D.S.C. Civ. R. 83.I.04 (emphasis added), asserting that the local rule's requirement was fulfilled by McChesney, who represented each of the plaintiffs and signed all of the papers filed in court on behalf of each. They argue that their out-of-state attorneys simply drafted briefs for their locally admitted attorney to review, edit, sign, and file and that this involvement did not violate the district court's local rules.

In further support of their argument, they claim that the district court has a "long history of allowing the arrangement

involved here in light of the full disclosure that has always been provided, and awarding fees for all the attorneys involved [and] . . . that the district court below itself never before interpreted its own rules to prohibit lawyers in one kind of case from hiring out-of-state lawyers to draft briefs—while permitting them to hire out-of-state paralegals."

The Commissioner argues that the district court reasonably applied the EAJA when it concluded that plaintiffs used a "hybrid form of representation" to circumvent the district court's local rules, and that such use of attorneys provided a special circumstance to render an award of fees for the out-of-state attorneys' work unjust.

In resolving the issue, we begin with an analysis of the EAJA's requirements. The EAJA provides that a district court "*shall* award to a prevailing party . . . *fees and other expenses* . . . incurred by that party in any civil action" against the United States "*unless* the court finds that the position of the United States was substantially justified *or that special circumstances make an award unjust*." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). The term "fees and other expenses" is defined to include:

> reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C. § 2412(d)(2)(A).

Congress designed the exceptions to the mandatory award of fees and expenses to prevailing parties as a "safety valve" that would "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of law that often underlie vigorous enforcement efforts" and that would provide district courts with "discretion to deny awards where equitable considerations dictate an award should not be made." *Nken v. Holder*, 385 F. App'x. 299, 302 (4th Cir. 2010) (quoting H.R. Rep. No. 96-1418, at 11 (1980)). We thus review the district court's grant or denial of reimbursement for attorneys fees for abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 571 (1988). We will find such abuse if the district court applied "mistaken legal principles" or made "clearly erroneous factual findings." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001).

The broad definition of "fees and other expenses" in the EAJA indicates, without much doubt, that Congress intended to award a wide range of fees and expenses to the prevailing party in litigation with the government, unless one of the exceptions applies. Thus, the EAJA authorizes the reimbursement of fees for persons conducting studies, doing analyses, or issuing reports, as well as for attorneys fees. And consistent with this manifested intent, we have held that the statute's authorization for reimbursement of attorneys fees includes authorization for reimbursement for work performed not only by attorneys but also by persons doing "tasks traditionally performed by an attorney and for which the attorney would customarily charge the client," regardless of whether a licensed attorney, paralegal, or law clerk performed them. *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008) (holding that the term "attorneys fees" includes "fees for paralegal services").

Accordingly, we have little difficulty in concluding that the EAJA authorizes the plaintiffs to receive reimbursement for work performed by an attorney, regardless of whether the attorney performing the work is admitted to practice or not. We therefore conclude that the EAJA authorizes reimbursement for work of the type performed by Martin and Naides in assisting McChesney with brief writing and related tasks.

In denying reimbursement for the work performed by Martin and Naides, the district court relied in essence on their failure to be admitted under the local rules as attorneys in the District of South Carolina or under the local rules' *pro hac vice* provisions, concluding that because these attorneys were performing legal services in South Carolina on a regular basis and therefore were engaged in the unauthorized practice of law, a fee award to them would be unjust.

In relying on this reasoning, we believe that the district court improperly linked the requirements for the practice of law in the district court with the requirements of the EAJA, thus limiting the scope of fees that the EAJA otherwise authorizes. And in doing this, the court ended up effectively sanctioning out-of-state attorneys for purported violations of its local rules by denying reimbursement for their fees under the EAJA. We conclude that the issues should not be so mixed, at least in the circumstances of this case, as they actually are separate matters.

The district court was, of course, rightfully concerned about the unauthorized practice of law in its court, and it has the authority to regulate that through local rules and an array of appropriate sanctions. We need not determine, however, whether Martin and Naides violated any local rules or, if they did, what the appropriate sanctions would be, because the violation in question, if any, was so attenuated and technical that it would not affect the plaintiffs' claims for fee awards under the EAJA, which does not condition eligibility for reimbursement on whether an attorney is admitted.

The violation hypothesized by the dissent and found by the district court would presumably require a showing that Martin and Naides "appeared" in the district court without court authorization or licensure in the District of South Carolina, such that their work constituted the unauthorized practice of law. In support of this view, the dissent relies on *Black's Law Dictionary*, which defines "[a]ppearance by attorney" as "[a]n act of an attorney in prosecuting an action on behalf of his client. Document filed in court in which attorney sets forth fact that he is representing a party to the action." *Post*, at 40 (quoting *Black's Law Dictionary* 97 (6th ed. 1990)). The dissent reasons that Martin and Naides "appeared" below by virtue of language in various briefs and papers indicating that they were "attorney[s] for plaintiff" or "[o]n the brief," and thus became ineligible for reimbursement by operation of the equitable doctrine of "unclean hands." *Post*, at 25-32.

Yet the record strongly suggests that Martin and Naides did not "appear" before the district court. Indeed, their role was quite limited. Martin and Naides never physically appeared in court or before the judge; they never filed a brief or paper in the court; they never communicated with opposing counsel; they never even communicated with the plaintiffs; their work agreement was with McChesney, a member of the district court bar, and not with the plaintiffs; and they prepared only drafts of briefs and papers which they then submitted to McChesney for editing, signing, and filing with the court. Even though their names were sometimes included on briefs as attorneys for the plaintiffs and they stated in their EAJA affidavits that they were attorneys for plaintiffs, the nature of their brief-writing function in supporting McChesney never changed. *See, e.g.*, *Dietrich Corp. v. King Res. Co.*, 596 F.2d 422 (10th Cir. 1979). Indeed, McChesney could just as well have retained an English professor or law professor to assist him in writing briefs and submitted those charges as paralegal type fees, with a legitimate expectation that his clients would receive reimbursement.

In *Dietrich*, two Colorado law firms retained a law professor at the University of Colorado, who was a "nationally recognized expert in the field of legal accounting" as a legal consultant. The professor was admitted to practice law in Illinois, but not in Colorado, where the suit was tried. When it came time for the court to apportion fees and costs, the law firms requested that the professor be compensated at an agreed upon rate. The bankruptcy trustee, however, objected, arguing that the professor had engaged in the unauthorized practice of law in Colorado. The trustee relied on letters which "showed the law firms had not employed [the professor] as a consultant, law clerk or paralegal, but rather 'at all times . . . as a practicing lawyer a fortiori, in the area of his specialty, the liability of accountants.'" *Dietrich*, 596 F.2d at 423. While the district court sustained the trustee's objection, the Tenth Circuit reversed, holding that the professor "was entitled to be treated as a lawyer whose services . . . did not constitute the unauthorized practice of law." *Id.* at 426. It explained:

> Is what [the professor] did, providing services in the field of his legal expertise to or through established law firms, with no court appearances as an attorney, the practice of law in Colorado? The cases and ethics opinions we have seen have involved either court appearances as counsel for private clients or the rendering of legal services directly to a client who was not a lawyer or law firm authorized to practice in the jurisdiction. Law firms have always hired unlicensed student law clerks, paralegals and persons who have completed their legal education but are awaiting admission to the bar, before or after taking a bar examination or fulfilling residency requirements. Virtually every lawyer has served in such a situation and performed services to or through other attorneys for some period prior to his or her own admission to practice in the state where such services were rendered. No one has treated this activity as the unau-

thorized practice of law, because the licensed attorneys alone remain responsible to the clients, there are no court appearances as attorney, and no holding out of the unlicensed person as an *independent* giver of legal advice.

*Id.* (citing *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966)). Quoting an American Bar Association ethics opinion, the court continued:

Of course, only the individuals permitted by the laws of their respective states to practice law there would be permitted to do the acts defined by the state as the practice of law in that state, but there are no ethical barriers to carrying on the practice by such a firm in each state so long as the particular person admitted in that state is the person who, on behalf of the firm, vouched for the work of all of the others and, with the client and in the courts, did the legal acts defined by that state as the practice of law.

*The important requirement in this respect is simply that the local man must be admitted in the state and must have the ability to make, and be responsible for making, decisions for the lawyer group.*

*Id.* (emphasis modified).

The court thus announced a commonsense rule: there is no unauthorized practice of law when "an individual trained in the law acts as a filter between [an] unlicensed person . . . and the lay client, adding and exercising independent professional judgment, and, importantly, is an officer of the local court subject to its discipline." *Id.* McChesney "acted as a filter" between the plaintiffs and Martin and Naides, the nonadmitted Social Security specialists, with the result that their brief-writing assistance was likewise permissible. *See* D.S.C. Civ. R. 83.I.04 (requiring that parties be represented by "at least

one member of the Bar of this Court who shall sign each pleading").

While it may be unjust to compensate individuals who, without proper licensure, directly represent clients and, on their behalf, file papers and appear before the court, there is nothing inequitable or "unclean" about the supporting role that Martin and Naides actually played in these cases. *See Dietrich*, 596 F.2d at 426. Their purported violations, if any, of the local rules would be quite thin and, at most, of a technical nature. Moreover, Martin and Naides would have been largely without notice that their actions violated the local rules. Accordingly, the doctrine of "unclean hands" is not supportable, and the nature of Martin and Naides' work cannot be a special circumstance making the EAJA award for their work unjust in these cases.

Because the EAJA provides reimbursement for fees incurred by persons, whether licensed attorneys or not, we believe that the district court must reconsider the fees of Martin and Naides. To be sure, it could choose to treat them as nonattorneys who provided support to McChesney, similar in nature to the work performed by other nonadmitted attorneys, such as law clerks or paralegals. Surely if Martin and Naides were summer associates in McChesney's operation, not admitted to practice, their time would be billable to clients and reimbursable under the EAJA. In refusing to consider their work at least on this basis, we conclude that the district court relied on a mistaken interpretation of the EAJA and therefore abused its discretion. Accordingly, we vacate the district court's orders in these cases and remand for reconsideration of plaintiffs' motions for reimbursement of fees and expenses. The court should take the work of Martin and Naides at least as the work of nonattorneys who provided McChesney support in writing briefs. But it is also free to take their work as falling in the class of attorney work for which admission to the district court might not be necessary.

In calculating any fee awards for the work performed by Martin and Naides, the district court should determine the prevailing market rate for services of the kind provided by them, based on their training, skill, and experience; provided that in no event may this rate be less than the rate traditionally used for summer associates, paralegals, and other nonattorneys performing legal work. *See Chertoff*, 553 U.S. at 581; 28 U.S.C. § 2412(d)(2)(A).

## III

Plaintiffs also contend that in *Davis*, No. 10-1176, the district court abused its discretion when it reduced the rate at which McChesney was compensated for travel time. Plaintiffs acknowledge that rate reductions are legitimate when an attorney voluntarily chooses to serve remotely located clients. But they claim that in this case, McChesney's travel was necessitated by factors out of his control. Specifically, "[i]n the District of South Carolina, Social Security cases are assigned in rotation to judges and divisions throughout the State, without regard to the jurisdiction in which the plaintiff resides." Because this rotation scheme was the cause of McChesney's travel, the plaintiffs argue that it was unreasonable to treat it as voluntary and thus subject to a lower rate. While the argument might be a legitimate one to make to the district court, the court, nonetheless, had broad discretion when ruling on fee requests brought under the EAJA to weigh that argument along with others. *See United States v. Cox*, 575 F.3d 352, 358-59 (4th Cir. 2009). We cannot conclude that, in the circumstances here, the district court's adjustments of fees for travel time was an abuse of discretion. *See Cooper v. United States R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994) (compensating travel time at a reduced rate).

In view of our determination to remand these cases for an award for fees charged by Martin and Naides, we do not reach the plaintiffs' other arguments challenging the district court's

analysis and application of the "special circumstances" exception to fee awards under the EAJA.

*AFFIRMED IN PART,*
*VACATED IN PART, AND*
*REMANDED FOR FURTHER PROCEEDINGS*

DAVIS, Circuit Judge, concurring in part and concurring in the judgment:

I agree entirely with my friend Judge Niemeyer's unimpeachable statutory analysis of the EAJA and with the resulting conclusion that the use of non-admitted contract attorneys to perform legal work in social security disability appeals is not a "special circumstance" justifying the withholding of attorney's fees for such work. As Judge Niemeyer persuasively demonstrates, the district court erred in its improper intermixing of the requirements for a lawyer's appearance before the district court with the requirements of the EAJA; the two are indeed separate matters. Thus, I concur in the judgment vacating the orders in these cases and remanding for reconsideration of plaintiffs' motions for fees and costs.

I also respect my friend Judge Hamilton's full-throated defense of the local rules of the United States District Court for the District of South Carolina and of the prerogative and indeed, the duty, of the judges of that district to enforce those rules, including those aimed at ensuring attorneys' competence as advocates and policing ethical norms. *Cf. Brown v. McGarr*, 774 F.2d 777, 780-82, 785-86 (7th Cir. 1985) (discussing the recommendations of the Devitt Committee, appointed by Chief Justice Burger in 1976 to make recommendations to improve the quality of advocacy in federal courts, and the implementation of such recommendations, in part, by district courts' adoption of local rules); *see* 28 U.S.C. §§ 2071, 1654;[1] *and see* Fed. R. Civ. P. 83 (authorizing adop-

---

[1]Section 2071 provides:

The Supreme Court and all courts established by Act of Con-

tion of local rules by United States District Courts by a "majority vote" of the district judges). I have previously acknowledged that "local legal culture drives [certain] practices," *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 414 (4th Cir. 2010) (Davis, J., concurring), and recognize that "local legal culture" certainly can influence a district court's local rules. This case poses an important question as to the extent the application of those rules should be influenced by "local legal culture."

Martin is a specialist in social security disability appeals litigation. He is a member in good standing of the Georgia Bar, maintaining offices in Decatur, Georgia, outside of Atlanta, and practices before the United States District Court for the Northern District of Georgia. His expertise in such cases has prompted local lawyers in the District of South Carolina and the Western District of North Carolina to retain his services in brief-writing in social security disability appeals.[2]

---

gress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.

28 U.S.C. § 2071.

Section 1654 provides:

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

28 U.S.C. § 1654.

[2]I note that the Martin firm has also encountered challenges from the Commissioner of Social Security to its entitlement to compensation in social security disability appeals cases in the Western District of North Carolina. *See Sneed v. Astrue*, 2010 WL 5395785 (W.D.N.C. Dec. 22, 2010) (staying consideration of a motion for attorney's fees under EAJA for work performed by Martin in social security disability appeals filed in the Western District of North Carolina pending the outcome of the appeal

Some, but not all, of the judges in those districts, in the face of objections by the Commissioner of Social Security, and invoking their local rules as authority, have refused, in whole or in part, to award attorney's fees to prevailing social security disability claimants for the work performed by Martin and members of his firm as contract attorneys. *Priestly v. Astrue*, No. 6:08-546 (D.S.C. Nov. 24, 2009); *Mortenson v. Astrue*, No. 8:07-547 (D.S.C. July 28, 2009), *aff'd on other grounds*, 2011 WL 1690068 (4th Cir. May 5, 2011). Other judges have rejected the Commissioner's argument but have recommended that Martin seek *pro hac vice* admission in future cases, in part "[t]o avoid confusion over this issue." *Pace v. Astrue*, 9:07-cv-546 (D.S.C. May 9, 2008); *see also Tadlock v. Astrue*, No. 8:06-cv-3610 (D.S.C. Apr. 9, 2009); *Freeman v. Astrue*, No. 0:06-cv-2255 (D.S.C. July 24, 2008). In still other cases, district judges characterized the Commissioner's objection to the payment of fees to prevailing plaintiffs in cases in which Martin provided services to local counsel as unjustified and have refused to sustain the Commissioner's objection. *See Stisser v. Astrue*, No. 3:07-3032 (D.S.C. Mar. 24, 2009); *Clowney v. Astrue*, No. 8:07-cv-856 (D.S.C. Sept. 15, 2008). To say that this chaotic state of affairs is highly undesirable is profound understatement.

As the lead district court opinion in these appeals notes, the conflict over EAJA fees arose because, as vigorously urged by the Commissioner in opposing (in whole or in part) an award of attorney's fees to prevailing parties in social security disability appeals, attorneys Martin and his associate are not admitted to the bar of the United States District Court for the District of South Carolina and, specifically, they were not

before us here). In addition, a recent case in the United States District Court for the Middle District of Florida found that the lawyers in the Martin firm, who are not admitted in that district, should be paid at the paralegal rate rather than at the attorney rate in a social security disability appeal. *See Riggins v. Astrue*, 2011 WL 2119338, at *3 (M.D. Fla. May 27, 2011).

admitted *pro hac vice*. *See* 2009 WL 4267218, at 2 ("The question, as the court sees it, is whether attorney Martin should be compensated at the same rate as a plaintiff's attorney of record when attorney Martin, though he no doubt provided valuable and skillful work, is not licensed to practice law in this district."); *see also Mullinax v. Astrue*, 2010 WL 2382560, at *1 (D.S.C. June 14, 2010) ("In at least four cases since May 2008, courts in this District have cautioned Mr. Martin against continuing to represent clients in the District of South Carolina without applying for *pro hac vice* admission in this District.").[3] However, because Martin and his associate have performed work for local attorney McChesney in dozens of cases over the last several years, they are *not eligible* for admission *pro hac vice* under District of South Carolina Local Civil Rule 83.I.05, which authorizes *pro hac vice* admission of attorneys "for occasional appearances," but not as a "substitute for regular admission to the Bar of this Court."

Therefore, under the reasoning of the orders under review, the only way for these lawyers to provide (and be paid for) their specialized brief-writing services to attorney McChesney, or other local attorneys in South Carolina, would be for them to be admitted to the bar of the District of South Carolina. Consequently, under Local Civil Rule 83.I.03, the only way for them to gain admission to practice in the District of South Carolina is for them to become members of the Bar of the Supreme Court of South Carolina. And, under Rule 402(c)(5) of the South Carolina Appellate Court Rules, the only way for them to become members of the Bar of the

---

[3]Obviously, for purposes of appearing in federal district court, Martin is not properly described as "unlicensed;" there is no general federal licensure requirement for attorneys. *See* Note, *Who's Afraid of a Uniform Federal Court Bar? Dispelling Fears About Standardizing Admission and Regulation of Attorneys in Federal Courts*, 22 Geo. J. Legal Ethics 811 (2009) (advocating creation of a uniform national system for attorney admission to practice before federal courts). Rather, though licensed to practice law by the Supreme Court of Georgia, he is "non-admitted" to the federal district court bar in the District of South Carolina.

Supreme Court of South Carolina is to pass the South Caro-
lina bar examination.

Put simply, in light of the local rules as applied by the dis-
trict judges in these cases, the United States District Court for
the District of South Carolina does not permit Martin to pro-
vide contractual legal services to McChesney unless he passes
the State of South Carolina's three-day-long bar exam. With
respect, in my judgment, under the circumstances of the cases
before us, this requirement imposes a journey to a bridge too
far.[4]

The requirement of passing an additional full-length, three-
day bar examination years after first gaining admission to a
state bar is highly burdensome, requiring extensive time and
expense. Such a requirement would be discouraging to any
practitioner looking to expand his or her specialized practice
(e.g., immigration law) to an additional geographic region
within the federal court system.[5]

---

[4]I note that because the United States District Court for the Northern
District of Georgia has a similar forum state requirement, *see* N.D. Ga.
L.R. 83.1, the problem presented here might well be the same if the roles
of Mr. Martin and Mr. McChesney were reversed. The existence of district
court exclusionary practices in the admission of counsel to their bars is a
longstanding reality. *See* Marie Cordisco, Eligibility Requirements For,
and Restrictions on, Practice Before the Federal District Courts (Federal
Judicial Center November 1995) at p. 2 (reporting that as of the time of
the report, "Fifty-five [of the ninety-four](59%) federal district courts limit
membership in its Bar to attorneys who are members of the bar of the state
or territorial possession in which the district court is located.").
http://www.fjc.gov/public/pdf.nsf/lookup/0005.pdf/$file/0005.pdf     (last
visited June 6, 2011).

[5]To be sure, federal courts have uniformly rejected challenges to the
requirement that admission to practice before individual federal district
courts be limited to attorneys admitted to the bar of the forum state. *See,
e.g.*, *Gallo v. U.S. Dist. Court For Dist. of Arizona*, 349 F.3d 1169, 1179
(9th Cir. 2003) (sustaining even a *retroactive* imposition of forum-state
bar membership requirement over constitutional challenge brought by an
attorney who lost his ability to practice in the District of Arizona), *cert.*

Furthermore, social security disability law is entirely federal, and its practice requires no knowledge of South Carolina law. It is also a unique, highly technical area of practice in which specialization can only benefit all parties to the litigation, including the court itself.

District Judge Fitzwater of the Northern District of Texas has observed how specialization actually works in the Commissioner's favor in the context of motions for the payment of fees under the EAJA:

> Moreover, the Commissioner's objections [to the request for fees performed by non-admitted contract attorneys] are questionable when carefully analyzed in the context of an EAJA fee application. He concedes that Bohr is a specialist in social security appeals. Given the comparatively modest cap on EAJA fees—which means that specialists cannot bill at significantly higher rates than might be expected

---

*denied*, 541 U.S. 1073 (2004). Courts have applied a highly deferential "rational basis" test to examine such exclusionary practices and they have been willing to indulge assumptions about the motivations for, and the efficacy of, such rules. *See id.* at 1181 n.6 (acknowledging that "[a]lthough the record does not indicate that the [District of Arizona] amended [its local rule to require admission to the state bar of Arizona as a requirement for admission to the federal bar] for the explicit purpose of ensuring quality attorney representation, it is well-established that rational basis scrutiny permits the court to consider any *conceivable* justifications for enacting the law") (alterations and citation omitted; emphasis in original).

However one views the persuasiveness of the assumed reasons offered as to why out-of-state attorneys are less likely to be competent, *see id.* at 1181 (observing, without citation to authority or empirical evidence, that "the standard for admission in both Arizona and California may well exceed that required in other states"), or more difficult to discipline, *see id.*, the point powerfully raised by the case at bar is whether, in the area of exclusive federal practice, such as social security disability appeals, a limited exception to such requirements such as that applied by some of the district judges in South Carolina, *see infra* pp. 21-23, is warranted.

of non-specialists—it would appear to be in the gov-
ernment's interest for disability claimants to be rep-
resented by persons whose experience and expertise
permits them to complete necessary legal services in
less time than might otherwise be required. When
evaluating potentially time intensive processes such
as research and brief writing—compared, for exam-
ple, to administrative functions—it is often difficult
to say that an attorney should have expended fewer
hours than he did or to quantify the part that is
excessive. When services are performed by a spe-
cialist, the person's professional expertise can serve
as a de facto governor against excessive fees. And it
should matter little to the Commissioner whether
Weisbrod performed a service himself or delegated
it to Bohr, provided that Weisbrod and Bohr in fact
performed the services for which fees are claimed,
that they did not engage in wasteful duplication, and
that Bohr's time expenditures were reasonable.

*Sandoval v. Apfel*, 86 F.Supp.2d 601, 608-09 (N.D. Tex.
2000). Similarly, I can discern no compelling reason why the
Commissioner would seek to prevent (by contesting reason-
able payments otherwise due under the EAJA) a local attor-
ney from utilizing the brief-writing services of an expert
social security disability practitioner. As Judge Niemeyer's
opinion convincingly shows, non-admission to the district
court bar hardly justifies non-payment as a matter of statutory
interpretation.[6]

   Questions regarding the wisdom and fairness of the appli-
cation of the district's local rules to one side, there is respect-
able and persuasive authority supporting the proposition that
a local attorney's use of non-admitted contract attorneys in

---

[6]With respect, the dissent's allegation that Mr. Martin and Ms. Naides
have "unclean hands" is wholly unwarranted. No district judge in South
Carolina has ever said such a thing.

social security appeals is entirely appropriate. *See Rose-Velasquez v. Astrue*, 2008 WL 1765659, at * 1-2 (D. Utah April 16, 2008); *Sandoval*, 86 F.Supp.2d at 604-11.[7] Indeed, District Judge Seymour and District Judge Currie have explicitly relied on such authority in parting company with their brethren in the District of South Carolina and in awarding fees and costs for work performed on such cases by Martin. *See Stisser*, No. 3:07-3032-MBS, slip op. at 2; *Smith v. Astrue*, 2008 WL 5255894, at *4 (D.S.C. Dec. 16, 2008); *Clowney*, No. 8:07-cv-856, slip op. at 2 n.1. It is my hope that upon the remand of these cases, the fine district judges of the District of South Carolina will give sympathetic consideration to the reasoning in those cases.

The irony evident in this case should not be lost on anyone. The rules adopted by this court (as mandated by the Federal Rules of Appellate Procedure[8]) limit the barriers to admission

---

[7]It must be acknowledged that the Northern District of Texas, in which *Sandoval* was decided, is among those districts that "have taken a more permissive approach and have removed barriers to entry, particularly that of requiring of admission to the bar of the state wherein the district court is located." *See* Note, 22 Geo. J. Legal Ethics at 815 (citing U.S. District Court for the Northern District Of Texas. LR 83.7(a)).

[8]*See* Fed. R. App. P. 46(a)(1):

> An attorney is eligible for admission to the bar of a court of appeals if that attorney is of good moral and professional character and is admitted to practice before the Supreme Court of the United States, the highest court of a state, another United States court of appeals, or a United States district court (including the district courts for Guam, the Northern Mariana Islands, and the Virgin Islands).

Obviously, the Rules Committee understands that competence to practice before an appellate court is not automatically transferrable to the art of trial advocacy and I do not suggest anything to the contrary. *See also supra* pp.16-17 & n. 1 (citing statutory basis for the authority of federal district judges to control admission of lawyers to practice before their courts). Nevertheless, the disconnectedness evident here (after all, the claim to compensation in these cases under the EAJA is based solely on "brief writing") is remarkable.

to our bar to two: (1) admission to practice and (2) good
moral character. *See* United States Court of Appeals for the
Fourth Circuit Rule LR 46(b). Thus, Mr. Martin, who is not
admitted to practice in any state in this circuit, is a member
of our bar and was able to file Appellants' briefs and then
appear and argue these cases before us; but he is said to be
ineligible for Congressionally-mandated compensation for
writing briefs under contract with, and under the supervisory
responsibility of, local attorneys who represent prevailing par-
ties in the District of South Carolina, within this circuit.

Manifestly, the perquisites of "local legal culture" have
their limits. *Cf. Frazier v. Heebe*, 482 U.S. 641, 646 (1987)
(exercising supervisory authority and applying "right and jus-
tice" standard to find a local rule of the Eastern District of
Louisiana requiring that attorneys who were members of the
bar of the State of Louisiana either reside in or maintain an
office in Louisiana to qualify for admission to the bar of that
district court was "unnecessary and irrational"). One could
reasonably conclude that those limits have been exceeded in
these cases.[9]

HAMILTON, Senior Circuit Judge, concurring in part and
dissenting in part:

I agree with the majority that, in *Davis*, the district court
did not abuse its discretion when it reduced the rate at which
attorney Paul McChesney (Attorney McChesney) was com-
pensated for travel time under the Equal Access to Justice Act
(the EAJA), 28 U.S.C. § 2412(d), and therefore, this portion
of the district court's order ruling on Davis' motion for attor-
neys' fees under the EAJA should be affirmed. However,
because, in my view, the district court did not abuse its discre-
tion in concluding that special circumstances existed that

---

[9]Although I would require that contract attorneys be paid at an "attorney
rate," Judge Niemeyer's opinion makes clear that upon the remand of
these cases, the district court is free to determine an appropriate rate.

make an award of attorneys' fees for the professional legal services of attorney Charles Martin (Attorney Martin) and his subordinate attorney Perrie Naides (Attorney Naides) in the present three cases unjust, I would also affirm the portion of the same order denying plaintiffs Zella Davis (Davis), Barbara Peter (Peter), and Andria Priestley (Priestley) such attorneys' fees under the EAJA. Accordingly, I dissent in part.

## I.

Proper analysis of the issues presented in this consolidated appeal require a full account of the relevant facts that informed the district court's exercise of discretion in denying the attorneys' fees at issue.

After the Social Security Administration denied Social Security disability benefits to Davis, Peter, and Priestley (collectively the Plaintiffs), each appealed their respective denials to the district court and prevailed.[1] Each then moved for recovery of attorneys' fees pursuant to the EAJA, which provides in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, **unless the court finds** that the position of the United States was substantially justified or **that special circumstances make an award unjust.**

---

[1]United States District Judge Joseph F. Anderson heard and decided Davis' and Peter's appeals, while United States District Judge G. Ross Anderson heard and decided Priestley's appeal. Unless noted, any reference to "the district court" in this opinion refers to the United States District Court for the District of South Carolina.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

Davis sought $8,639.62 in fees under the EAJA for 35.75 hours of attorney time, at $172.46 per hour, and 29.50 hours of paralegal time at $83.87 per hour. Of the 35.75 hours of attorney time, Paul T. McChesney (Attorney McChesney) performed 15.50 hours, while Attorney Martin performed 20.25 hours.

Attorney McChesney is a member of the Bar of the Supreme Court of South Carolina and is a member of the Bar of the district court, which Bar "consists of those attorneys heretofore admitted and those attorneys hereafter admitted as prescribed by Local Civil Rule 83.I.01-03." Local Civil Rule 83.I.01DSC. In order to be eligible for admission to the Bar of the district court, a person must, *inter alia*, be a member in good standing of the Bar of the Supreme Court of South Carolina. Local Civil Rule 83.I.02DSC. Attorney Martin is a licensed member of the Bar of the Supreme Court of Georgia, but is not a member of the Bar of the district court. Moreover, Attorney Martin never applied to be admitted *pro hac vice* in Davis' case, pursuant to Local Civil Rule 83.I.05DSC, entitled "Appearances by Attorneys not Admitted in the District." *Id.*

Notably, although Davis and Attorney McChesney had entered into a fee agreement at the inception of their attorney-client relationship, Davis and Attorney Martin never entered into such an agreement. Such fee agreement gave McChesney the right to "get other lawyers to help" in Davis' case, but specified that such help would be "at no extra charge" to Davis. (J.A. 182). It also provided that "[a]ssociated lawyers assume joint responsibility for representation." *Id.*

Davis' opening brief on the merits below and reply brief on the merits below declared that Attorney Martin was "On the brief," identified Attorney Martin as "Attorney for Plaintiff," gave his Georgia Bar number, his office address in Georgia,

his office telephone number, and his office fax number. (government's Addendum at 2); *Davis v. Astrue*, No. 2:07-cv-01621-JFA (D.S.C. January 31, 2008) (Docket Entry No. 25 at 12). Davis' opening brief in support of her motion for attorneys' fees under the EAJA states, in relevant part: "In the representation of the claimant in the district court Attorney Charles L. Martin spent approximately 20.25 hours representing plaintiff before the court . . . ." (J.A. 169).

In his affidavit that Attorney Martin provided in support of Davis' motion, entitled "AFFIDAVIT OF COUNSEL FOR THE PLAINTIFF," Attorney Martin attested:

> I am counsel for [Davis] in the above-entitled action. In representing [Davis] before the United States District Court I performed the services specified on the attached time summary.

(J.A. 176). He signed the affidavit (in the form of a handwritten signature) and identified himself as "Attorney for Plaintiff." (J.A. 178). Attorney Martin also gave his Georgia Bar Number and office information. The attached time summary reflected that Attorney Martin provided substantial case management services, performed legal research, reviewed all filings in the case, drafted the opening and reply briefs ("including final proofing and revision"), and drafted Davis' motion for recovery of fees under the EAJA. (J.A. 179).

Peter sought $6,083.52 in attorneys' fees under the EAJA for 34.45 hours of attorney time, at $176.59 per hour. Of the 34.45 hours of attorney time, McChesney performed 4.75 hours, Attorney Martin performed 6.70 hours, and Attorney Naides performed 23.00 hours. Attorney Naides is a subordinate of Martin in his law firm. She is a member of the Bar of the Supreme Court of Pennsylvania, but is not a regular member of the district court Bar. Neither Attorney Martin nor Attorney Naides applied to be admitted *pro hac vice* in Peter's case.

Peter and Attorney McChesney entered into a fee agreement at the inception of their attorney-client relationship, but Peter never entered into a fee agreement with Attorney Martin or Attorney Naides. Similar to the language contained in the fee agreement between Davis and Attorney McChesney, the fee agreement between Peter and Attorney McChesney provided: "We can hire other attorneys, but that won't cost you anything." (J.A. 314). However, the Peter/Attorney McChesney fee agreement lacks language to the effect that associated lawyers assume joint responsibility for representation.

In Peter's case, Attorney Martin signed the opening brief on the merits (in the form of an electronic signature), stated in such brief that he was "On the brief," identified himself as "Attorney for Plaintiff," gave his Georgia Bar number, his office address in Georgia, his office telephone number, and his office fax number. (government's Addendum 3); *Peter v. Astrue*, No. 3:07-cv-03785-JFA-JRM (D.S.C. May 5, 2008) (Docket Entry No. 14 at 35). Peter's opening brief in support of her motion for attorneys' fees under the EAJA states that Attorney Martin "spent approximately 6.70 hours representing plaintiff before the court . . . ." *Peter*, No. 3:07-cv-03785-JFA-JRM (D.S.C. Sept. 15, 2008) (Docket Entry No. 21-1 at 2). In support of Peter's motion for attorneys' fees under the EAJA, Attorney Martin provided an affidavit, entitled "AFFIDAVIT OF COUNSEL FOR THE PLAINTIFF," stating:

> I am counsel for [Peter] in the above-entitled action. In representing [Peter] before the United States District Court I performed the services specified on the attached time summary.

(J.A. 308). He signed the affidavit (in the form of a handwritten signature) and identified himself as "Attorney for Plaintiff." (J.A. 310). He also gave his Georgia Bar Number and office information. *Id.* The attached time summary reflected that Attorney Martin provided substantial case management services, reviewed all filings in the case, drafted the opening

brief ("including final proofing and revision"), and drafted Peter's motion for recovery of fees under the EAJA. (J.A. 311).

In support of Peter's motion for fees under the EAJA, Attorney Naides Martin provided an affidavit attesting to the following:

> I provided legal services in support of the representation of Barbara C. Peter to Paul Townsend McChesney, lead counsel for the plaintiff/appellant in the above-entitled action. In representing Barbara C. Peter before the District Court, I spent the following amount of time: 23.00 hours.

(J.A. 312). Attorney Naides signed the affidavit (in the form of a handwritten signature) and identified herself as "Attorney for Plaintiff." (J.A. 313). The same time summary submitted in support of the time spent by Attorney Martin in the case showed that Attorney Naides read the transcript from the administrative proceedings, drafted the statement of the facts for Peter's opening brief, performed legal research, drafted arguments for incorporation into Peter's opening brief, and revised and edited such brief.

Priestley sought $6,661.57 in attorneys' fees under the EAJA, for 38.80 hours of total attorney time, at $171.69 per hour. Of these 38.80 hours, McChesney performed 5.75 hours; Attorney Martin performed 8.55 hours; and Attorney Naides performed 24.50 hours.

Priestley and Attorney McChesney entered into a fee agreement at the inception of their attorney-client relationship, but Priestley never entered into a fee agreement with Attorney Martin or Attorney Naides. The fee agreement between Priestley and Attorney McChesney provided: "We can get other lawyers to help at no extra charge." (J.A. 50). Moreover,

it provided that "[a]ssociated lawyers assume joint responsibility for representation." *Id.*

Attorney Martin signed the opening brief on the merits (in the form of an electronic signature), stated in such briefs that he was "On the brief," identified himself as "Attorney for Plaintiff," and gave his Georgia Bar number, his office address in Georgia, his office telephone number, and his office fax number. (government's Addendum 4); *Priestly v. Astrue*, No. 6:08-cv-00546-GRA-WMC (D.S.C. Sept. 22, 2008) (Docket Entry No. 18 at 32). With the exception of the electronic signature, the same information is repeated in the reply brief on the merits.

Notably, by the time Priestley had filed her motion for fees under the EAJA, Attorneys Martin and Naides had been cautioned by the district court at least three times (in other Social Security disability appeals) against continuing to represent clients in the United States District Court for the District of South Carolina without applying for *pro hac vice* admission. Not surprisingly, when Attorney Martin drafted the brief in support of Priestley's motion for fees under the EAJA, Attorney Martin changed his standard language in such brief, previously stating that he and Naides represented the plaintiff, to language characterizing his activity in the case as "providing brief writing services to Attorney Paul Townsend McChesney" and characterizing Attorney Naides' activity in the case as "reviewing the transcript and preparing the statement of the case in support of Paul Townsend McChesney." (J.A. 37). In the same brief, Attorney Martin states that he is "On the brief," identifies himself as "Attorney for Plaintiff," and gives his Georgia Bar number and other office information.

As he did in *Davis* and *Peter*, Attorney Martin entitled the affidavit that he provided in support of Priestley's motion for attorneys' fees under the EAJA as "AFFIDAVIT OF COUNSEL FOR THE PLAINTIFF." (J.A. 44). However, similar to Attorney Martin's change in the description of his activity in

the brief in support of Priestley's motion for attorneys' fees under the EAJA, Martin changed his standard affidavit language to state:

> I am an attorney providing brief writing services for Paul Townsend McChesney, attorney for [Priestley]. In support of [Attorney McChesney's] representation of [Priestley] before the United States District Court I performed the services specified on the attached time summary.

(J.A. 44). He signed the affidavit (in the form of a handwritten signature) and identified himself as "Attorney for Plaintiff." (J.A. 46). The attached time summary, which accounts for the time of Attorney Martin and Attorney Naides reflects the same division of labor as is found in the time summary in *Peter*.

Attorney Naides' affidavit in support of Priestley's motion for attorneys' fees under the EAJA states, in relevant part:

> I provided legal services in support of the representation of Andria S. Priestl[e]y to Paul Townsend McChesney, counsel for the plaintiff/appellant in the above-entitled action. In support of Paul Townsend McChesney's representation of Andria S. Priestl[e]y before the District Court, I spent the following amount of time: 24.50 hours.

(J.A. 48). Attorney Naides signed her affidavit (in the form of a handwritten signature): "Attorney for Plaintiff." (J.A. 49).

Notably, neither Davis, Peter, nor Priestley ever sought fees under the EAJA for the time of Attorney Martin or Naides at a rate lower than that of Attorney McChesney. Indeed, the record reflects that throughout this litigation, the fees sought under the EAJA for the time of Attorney Martin and Naides have always been at the same rate as attorney time for Attor-

ney McChesney. Moreover, the record makes abundantly clear that the Plaintiffs were seeking only attorneys' fees for services rendered by Attorneys Martin and Naides at their normal hourly rate as attorneys under the EAJA fee scheme, as opposed to some lesser rate as would be awarded for mere behind-the-scene brief writing, paralegal services, or layman services.

Citing Local Civil Rule 83.I.05DSC, which requires attorneys who are not admitted to practice before the district court and who desire to appear before the district court to be admitted *pro hac vice*, the government argued that attorneys' fees for Attorneys Martin and Naides should be compensated, if at all, at a lower hourly rate than McChesney, a position quite contrary to Attorney Martin's and Attorney Naides' demand for attorneys' fees at their normal hourly rate as attorneys under the EAJA fee scheme.

Of relevance in the present appeal, in all three cases, the district court agreed with the government that awarding attorneys' fees under the EAJA for the work of Attorney Martin in *Davis* and Attorneys Martin and Naides in *Peter* and *Priestley* would be unjust, and therefore denied attorney fee awards in this regard under the EAJA. As noted previously, the same district court judge simultaneously ruled on Davis' and Peter's respective motions for attorneys' fees under the EAJA, while a different district court judge subsequently ruled on Priestley's motion for attorneys' fees under the EAJA.

In *Davis* and *Peter*, the district court aptly described Attorney Martin as a "fixture" in the United States District Court for the District of South Carolina since 2003. (J.A. 224). As the district court correctly went on to state:

> Though he has not filed a formal appearance as counsel of record in any case in this time period, he has filed briefs for plaintiffs in fifty-eight cases in

this district. Forty-five of these cases have come in the last five years. In all of these cases, attorney Martin either signed court documents as "attorney for plaintiff," filed affidavits in support of requests for attorney's fees attesting that he was "counsel for the plaintiff in the above-entitled action" and that he "represented" the plaintiff before the district court, or both.

(J.A. 224). The district court listed all fifty-eight cases by name and civil action number in an attachment to its order. The district court next made the following findings of fact, which are undisputed:

> In the cases in this district where attorney McChesney and attorney Martin have worked together, the case begins by attorney McChesney handling the plaintiff's administrative case before the Social Security Commission. Should the plaintiff wish to appeal the commissioner's decision, attorney McChesney files the appeal in the district court. When it comes time to brief the issues for the district court's review, a subordinate in attorney Martin's office—either an attorney or a paralegal—does the lion's share of the work. Attorney Martin then reviews the work-product, as does attorney McChesney. Should a plaintiff win the appeal in the district court, the motion for attorney's fees which follows outlines a distribution of work along the following lines: attorney McChesney averages about four to seven hours of work on the usual appeal; attorney Martin, about seven to twelve hours; and a subordinate attorney or paralegal, about twenty to thirty hours.

(J.A. 224-25).

In the district court's view, Attorney Martin's history in the District of South Carolina compelled the conclusion that

Attorney Martin improperly sought the benefits of representing clients before the district court without being licensed to do so. Similarly, in an obvious reference to Local Rule 83.I.05DSC pertaining to appearances by attorneys not admitted to practice before the district court, the district court found that given Attorney Martin's prolonged history in the district and the nature of his continuous contacts therein, "it would be intellectually disingenuous to characterize him as not having 'appeared' here." (J.A. 230). The district court then stated that the certainty as to whether Attorney Martin would be admitted to the district *pro hac vice* was also in doubt in light of this history. Because Attorney Naides is a subordinate in Attorney Martin's law firm and repeatedly held herself out via affidavit as representing various Social Security plaintiffs before the district court, the district court treated the conduct of Attorney Martin and Attorney Naides as inextricably intertwined and equally culpable.

Based upon the above factual circumstances, the district court then applied equitable principles to hold that awarding the attorneys' fees requested under the EAJA for the attorney time of Attorney Martin and Attorney Naides would be unjust. The crux of the district court's reasoning is as follows:

> It is true that the EAJA does not make the entitlement to attorney's fees contingent on an attorney's being licensed. However, the question, as the court sees it, is whether the court is required to compensate an unlicensed attorney who improperly represents clients in this district as if the attorney were licensed to practice law in this district. The court finds that public policy commands this answer to be "no." The EAJA requires that an attorney's fee be reasonable and that it be awarded "based upon prevailing market rates for the kind and quality of services furnished." § 2412(d)(2)(A). Public policy commands that there be no market for attorneys' services which flout a jurisdiction's licensure rules.

(J.A. 399-400).

Priestley filed her motion for fees under the EAJA one month after the district court had ruled upon Davis' and Peter's applications for attorneys' fees under the EAJA. The government opposed any award of attorney's fees to Priestley for the attorney time of Attorney Martin and Attorney Naides on the same ground that it opposed any award of fees under the EAJA for the attorney fees of Attorney Martin in *Davis* and Attorneys Martin and Naides in *Peter*. Of relevance in the present appeal, the government opposed the district court awarding Priestley any attorneys' fees under the EAJA for the attorney time of Attorney Martin and Attorney Naides on the ground that neither were members of the Bar of the district court, neither had filed for admission *pro hac vice* in the case, and, in four cases since May 2008, the district court (via various judges) had cautioned Attorneys Martin and Naides about continuing to hold themselves out as representing clients in federal district court in South Carolina without applying for admission *pro hac vice. Thompson v. Comm'r of Soc. Sec.*, No. 0:07-1424-RBH (D.S.C. May 13, 2009); *Tadlock v. Comm'r of Soc. Sec.*, No. 8:06-3610-RBH (D.S.C. April 9, 2009); *Freeman v. Astrue*, No. 0:06-02255-TLW-BM at 2 (D.S.C. July 24, 2008); *Pace v. Astrue*, No. 9:07-00546-SB (D.S.C. May 9, 2008).

Expressly following the reasoning of the district court in *Davis* and *Peter* with respect to the requests for attorneys' fees under the EAJA for Attorney Martin and Attorney Naides, the district court in *Priestley*, denied Priestley the attorneys' fees requested under the EAJA with respect to the attorney time of Attorney Martin and Attorney Naides.

II.

In relevant part, the EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil

action . . . brought by or against the United States . . . unless the court finds that . . . special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Here, in denying attorneys' fees for the attorney time of Attorneys Martin and Naides in the present cases, the district court held that special circumstances made the award of attorneys' fees for such time unjust.[2] We review these rulings for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 559 (1988).

In my view, the district court did not abuse its discretion. The special circumstances provision of the EAJA is grounded in equity, such that it "explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party." *United States v. 27.09 Acres of Land, More or Less, Situated in the Town of Harrison and the Town of North Castle*, 43 F.3d 769, 772 (2d Cir. 1994) (internal quotation marks omitted). As the legislative history of the EAJA makes clear, the special circumstances provision "gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 96-1418, at 11 (1980). The doctrine of unclean hands is a traditional equitable consideration, *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945), the theme of which pervades the jurisprudence of "special circumstances" under the EAJA, *Air Transport Ass'n of Canada v. F.A.A.*, 156 F.3d 1329, 1333 (D.C. Cir. 1998). *See, e.g.*, *Oguachuba v. INS*, 706 F.2d 93, 99 (2d Cir. 1983) (denying attorneys' fees under the special-circumstances-make-an-award-unjust exception under the EAJA, because, in classic equity terms, prevailing party was without clean hands). The doctrine of unclean hands applies to deny a party relief when there is a close nexus between the party's unethical conduct and the transactions upon which the party seeks relief. *In re Uwimana*, 274 F.3d 806, 810 (4th Cir.

---

[2]Notably, any issues regarding Attorney Naides are not implicated in *Davis*. However, for ease of reading, my analysis will not make this distinction.

2001). Notably, "[c]ourts are concerned primarily with their own integrity in the application of the clean hands maxim and even though not raised by the parties the court will of its own motion apply it." *Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959).

The first critical point that must be made in support of the district court's denial of attorneys' fees under the EAJA for the attorney time of Attorneys Martin and Naides is that Attorneys Martin and Naides are the real parties in interest. The respective fee agreements between Davis, Peter, and Priestley on the one hand and McChesney on the other hand each made clear that the plaintiff would not be liable for the attorneys' fees of any attorney that Attorney McChesney enlisted to help in the case. Thus, while "'[r]ightfully, courts are reluctant to punish a client for the behavior of his lawyer,'" *Dove v. CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978), Plaintiffs suffered no prejudice from the rulings challenged here.

The second critical point is that the record leaves no doubt that in refusing to award attorneys' fees under the EAJA for the attorney time of Attorneys Martin and Naides, the district court invoked the equitable doctrine of unclean hands to protect the integrity of the court. As the majority opinion acknowledges, *ante* at 4, district courts have authority to regulate the practice of law before them.[3] *See* 28 U.S.C. § 1654 (authorizing federal courts to make rules regulating the admission of attorneys to practice before them); *id.* § 2071(a) ("The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title."); Fed. R. Civ. P. 83 (recognizing and regu-

---

[3]By application of the Supremacy Clause, South Carolina law does not regulate the practice of law in federal district court. U.S. Const. art. VI, cl.2; *Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379, 385 (1963).

lating power of district court, acting through majority of its district judges, to adopt and amend rules governing its practice). Because neither Attorney Martin nor Attorney Naides are members of the Bar of the Supreme Court of South Carolina, neither is eligible for admission to the Bar of the district court. Local Civil Rule 83.I.02DSC. The only avenue by which they may validly appear before the district court as attorneys is pursuant to Local Civil Rule 83.I.05DSC, entitled "Appearances by Attorneys not Admitted in the District," which rule provides, in relevant part:

(A) Upon motion of an attorney admitted to practice before this Court, any person who is a member in good standing of the Bar of a United States District Court and the Bar of the highest court of any state or the District of Columbia may be permitted **to appear** in a particular matter in association with a member of the Bar of this Court . . .

(B) **The appearance of an attorney** pursuant to this Rule shall confer jurisdiction upon this Court for any alleged misconduct in any matter related to the action for which the appearance is allowed. The Court may revoke admission under this Local Civil Rule at its discretion.

(C) This Rule is intended to allow for **occasional appearances by attorneys** who do not conduct a substantial portion of their practices in this District. It is not intended to substitute for regular admission to the Bar of this Court. In determining whether admission under this Rule would violate its intended purpose, the Court may consider, inter alia, whether the attorney resides in South Carolina (and, if so, the length of the residence), the frequency with which the **attorney appears** in the state and federal courts located in this state, the proportion of the attorney's

> practice attributable to cases filed in South Carolina, and other factors . . . .

Local Civil Rule 83.I.05DSC (emphasis added). In Latin, this rule permits attorneys not admitted to practice before the district court to appear before the court "*pro hac vice*," which means "[f]or this occasion or particular purpose." *Black's Law Dictionary* 1227 (7th ed. 1999).

Notably, the validity and enforceability of Local Civil Rule 83.I.02DSC and Local Civil Rule 83.I.05DSC, at all times relevant to the present cases, are beyond dispute. The Judicial Council of the United States Court of Appeals for the Fourth Circuit is statutorily charged with periodically reviewing the local rules of all district courts within the Fourth Circuit for consistency with the rules prescribed by the United States Supreme Court under 28 U.S.C. § 2072, *see id.* § 332(d)(4), for example, for consistency with the Federal Rules of Civil Procedure. If, during the course of such review, the Judicial Council of the Fourth Circuit finds an inconsistency in a local rule of a district court within the Fourth Circuit, it "may modify or abrogate any such rule . . . ." *Id.* Because, as of the time of this writing, the Judicial Council of the Fourth Circuit has neither modified nor abrogated Local Civil Rule 83.I.02DSC or Local Civil Rule 83.I.05DSC, they "remain in effect," 28 U.S.C. § 2071(c)(1).

The record is also undisputed that Attorneys Martin and Naides did not apply, pursuant to Local Civil Rule 83.I.05DSC, to appear *pro hac vice* before the district court in the present cases. Indeed, as the majority acknowledges, they suggest they would not have qualified to appear *pro hac vice* because they associated with McChesney too regularly to satisfy the "occasional appearance" requirement of Local Civil Rule 83.I.05DSC.

Moreover, the district court did not clearly err in finding that Attorneys Martin and Naides appeared before the district

court, as the term "appearance of an attorney" is found in Local Civil Rule 83.I.05DSC. While the Local Civil Rules of the United States District Court for the District of South Carolina do not define the term "appearance of an attorney" nor give any examples of attorney conduct qualifying as appearing before the district court, *Black's Law Dictionary* (6th ed. 1990), upon which we routinely rely as persuasive authority, *see e.g.*, *Mining Energy, Inc. v. Director, OWCP*, 391 F.3d 571, 575 (4th Cir. 2004), defines the almost identical term "[a]ppearance by attorney" as:

> An act of an attorney in prosecuting an action on behalf of his client. Document filed in court in which attorney sets forth fact that he is representing a party to the action.

*Black's Law Dictionary* 97 (6th ed. 1990). Consistent with this definition, affixing a name to a pleading or a brief has been interpreted by the Supreme Court of Nebraska as evincing intent to be involved in the litigation:

> The purpose of resident counsel joining with nonresident counsel is obvious. It is to insure that the nonresident counsel will be associated with a counsel involved in the litigation who is knowledgeable and familiar with the laws and practices of this state. **By permitting his name to be affixed to a pleading or brief, a resident lawyer represents to this court that he is a part of the litigation and a counsel of record.** Accordingly, he should be held accountable for the transaction of the litigation to the full extent as if there were no nonresident counsel. A resident lawyer should not permit his or her name to be affixed to pleadings or briefs unless he or she intends to be involved in the litigation and familiar with the actions taken by nonresident counsel.

*Emry v. Am. Honda Motor Co., Inc.*, 334 N.W.2d 786, 793 (Neb. 1983) (emphasis added) (internal quotation marks omitted).

While neither Attorney Martin nor Attorney Naides filed a formal document stating that he or she was attorney of record in the present cases, *see, e.g.*, I(c) of JS44 civil cover sheet, approved by the Judicial Conference of the United States in 1974 (Rev. 03/99), when the record is viewed as a whole, including the prior Social Security cases noted on the district court's attachment to its order in *Davis* and *Peter*, each certainly engaged in sufficient affirmative conduct to support the district court's factual finding that each had appeared before the district court in a manner sufficient to trigger the need to file for admission *pro hac vice*, pursuant to Local Civil Rule 83.I.05DSC. Accordingly, there is no basis for us to hold the district court clearly erred in this regard. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). Moreover, had the district court awarded the attorneys' fees requested for Attorneys Martin and Naides, the district court would have allowed such attorneys to reap the benefits of their wrongdoing. This is the very type of injustice the doctrine of unclean hands is meant to prevent and for which the special-circumstances-make-an-award-unjust exception under the EAJA applies. *See In Re Uwimana*, 274 F.3d at 810-11 (doctrine of unclean hands applies to prevent party from using courts to reap benefits of wrongdoing). Thus, the district court acted well within its discretion in applying the equitable doctrine of unclean hands to prevent Attorneys Martin and Naides from reaping the benefits of their own wrongdoing.

One of two fundamental analytical errors underlying the analysis of the majority opinion is the "belie[f] that the district court improperly linked the requirements for the practice of law in the district court with the requirements of the EAJA,

thus limiting the scope of fees that the EAJA otherwise authorizes." *Ante* at 10. **Not surprisingly, no legal authority supports the majority's belief; indeed, the majority cites none.** Moreover, the majority's belief finds no support in the language of the Local Rules or the EAJA. In fact, the open-ended language of the EAJA's special circumstances exception and the EAJA's legislative history emphasizing the exception's equitable purposes is wholly inconsistent with the majority's belief and its related conclusion that the issues of out-of-state attorneys violating the local rules of the district court and the entitlement to an award of attorneys' fees under the EAJA for the work of such attorneys "should not be so mixed, at least in the circumstances of this case, as they actually are separate matters." *Ante* at 10. In conclusion, while the district court certainly had the authority to handle the matters of Attorney Martin's and Naides' misconduct before it separately from its ruling on the Plaintiffs' motions seeking recovery of attorneys' fees under the EAJA for their attorney time, there is no persuasive authority, let alone binding authority, suggesting that the district court abused its discretion in handling the issues simultaneously as it did.

In its eagerness to ensure that Attorneys Martin and Naides are paid for their time in the present cases, the majority opinion materially mischaracterizes their role in the present cases as "quite limited," *ante* at 11, *i.e.*, as mere brief writers or something other than lawyers, once again contrary to their claims before the district court as noted herein. Thus, the second fundamental analytical error underlying the analysis of the majority opinion is the majority's premise that Attorneys Martin and Naides only provided behind-the-scenes brief writing services to Attorney McChesney, without addressing the conduct of Attorneys Martin and Naides amounting to appearances in the district court requiring admission via a *pro hac vice* motion, pursuant to Local Civil Rule 83.I.05DSC. In stark contrast to Plaintiffs' characterization on appeal of Attorney Martin's and Attorney Naides' involvement in these cases below as limited to behind-the-scenes brief writing,

which characterization the majority has accepted wholesale and without analysis, *see ante* at 4 ("[W]e conclude that the use of nonadmitted lawyers for brief writing services does not present a 'special circumstance' sufficient to deny a fee award as 'unjust' under the EAJA."), the undisputed evidence reflects their active representation of the Plaintiffs before the district court, constituting an appearance before the district court (requiring admission via a *pro hac vice* motion, pursuant to Local Civil Rule 83.I.05DSC.), which is a far cry from the majority's English professor example, *see ante* at 11, and the strictly legal consultant role of the law professor at issue in *Dietrich Corp. v. King Res. Co.*, 596 F.2d 422 (10th Cir. 1979), the bankruptcy case upon which the majority opinion unavailingly relies, *see ante* at 12-14.

First, without exception, in the fee affidavits submitted by Attorneys Martin and Naides, each represented to the district court that he or she was an attorney for the plaintiff. Second, in many instances, Attorney Martin signed briefing or permitted briefing to be filed stating that he was an attorney for the plaintiff and including all of his office contact information and Georgia Bar number. In the fee affidavits submitted by Attorney Martin in *Davis* and *Peter*, Attorney Martin declared under penalty of perjury that he represented the plaintiff before the district court. Attorney Naides did the same thing in *Peter*. Third, in the fee affidavits filed in numerous previous cases, Attorneys Martin and Naides each declared under penalty of perjury that he or she represented the plaintiff before the district court, such that a well-documented pattern of these attorneys' Local Rule violating conduct exists. Because the sources of these inculpatory statements are Attorneys Martin and Naides themselves, they constitute highly probative evidence that Attorneys Martin and Naides appeared before the district court in violation of Local Civil Rule 83.I.05DSC. *See Roberts v. LaConey*, 650 S.E.2d 474 (S.C. 2007) (in determining whether someone is practicing law, it is important to consider representations the person makes about his own activity). Fourth, the time records reflect

that Attorney Martin was the person who primarily managed the cases of the Plaintiffs before the district court, including monitoring deadlines and reviewing all filings. Fifth, while I recognize that the case for appearance before the district court of Attorney Martin is stronger than that of Attorney Naides, the record suggests that Attorney Naides agreed with Attorney Martin regarding the manner in which their law firm would handle these Social Security cases.[4] Such agreement logically brings into play by analogy the concept of civil conspiracy, making Attorney Naides equally culpable for the improper conduct of Attorney Martin. *Cf.* Restatement (Second) of Torts § 876 (1979) (Persons Acting in Concert). All of these facts are inconsistent with the assertion that Attorneys Martin and Naides provided only brief writing services for Attorney McChesney and serve to materially distinguish the majority opinion's English professor example. They also serve to materially distinguish *Dietrich Corp.*, 596 F.2d at 423, the case upon which the majority extensively relies in which the law professor at issue provided only legal consulting services **and did not violate any local court rule**. Also severely undercutting the credibility of the majority opinion is the fact that the majority opinion completely ignores the posture of the Plaintiffs' respective motions for attorneys' fees. Specifically, the motions themselves, including the attachments, make abundantly clear that the Plaintiffs were seeking only attorneys' fees for services rendered by Attorneys Martin and Naides at their normal hourly rate as attorneys under the EAJA fee scheme, as opposed to some lesser rate as would be

---

[4]For example, in her affidavit in support of the plaintiff's motion for attorneys' fees under the EAJA in *Tadlock v. Barnhart*, 8:06-3610-RBH (a case listed on Attachment A of Judge Joseph F. Anderson's order denying attorneys' fees for the attorney time of Attorneys Martin and Naides in *Davis* and *Peter*), Attorney Naides stated under penalty perjury that she represented the plaintiff before the district court and that Attorney Martin was "lead counsel" for the plaintiff. *Id.* (Docket Entry 20-4 at 1) (May 2, 2008). She signed the affidavit (in the form of a hand written signature) as "Attorney for Plaintiff." *Id.* at 2.

awarded for brief writing or other legal services by, for example, paralegals or layman.

In summary, when one views the record as a whole, the picture becomes crystal clear that Attorneys Martin and Naides were not content to be mere behind-the-scene brief writers, who did not actually represent the Plaintiffs. Rather, they wanted to hold themselves out before the district court, the district court Bar, other fellow attorneys, and potential Social Security claimants as attorneys who represent Social Security claimants *before* the district court. Professional ego and the motivation to create and seize commercial opportunity were obviously at play. To permit Attorneys Martin and Naides to obtain court ordered fees for services performed in violation of Local Civil Rule 83.I.05DSC, as the majority opinion does, condones, if not encourages, the same wrongful behavior and nullifies such local rule.[5] This the special-circumstances-make-an-award-unjust exception under the EAJA unquestionably applies to prevent.

Finally, the fact that other district judges in the same district court have previously awarded attorney fees under the EAJA to Attorneys Martin and Naides at their requested full hourly attorney rate is worthy of addressing. For example, in *Clowney v. Astrue*, No. 8:07-856-CMC-BHH (DSC), United States District Judge Cameron McGowan Currie awarded fees under the EAJA to Attorneys Martin and Naides at their requested full hourly attorney rate. *Id.* (Docket Entry No. 33) (D.S.C. Sept. 15, 2008). In so doing, Judge Currie rejected the government's argument that because non-admitted Attorneys

---

[5]Unfortunately, the majority's nullification of Local Civil Rule 83.I.05DSC also nullifies similar run-of-the-mill local district court rules in this circuit, *see*, Local Civil Rule 101-DMD; Local Civil Rule 83.1.E.1-EDNC; Local Civil Rule 83.1.D.1-MDNC; Local Civil Rule 83.1.D.1-WDNC; Local Civil Rule 83.1.D.1-EDVA; Local Civil Rule 6.D-WDVA; Local Civil Rule 83.02-NDWV; Local Civil Rule 83.6-SDWV; and threatens other run-of-the-mill local district court rules in our sister circuits, *see, e.g.*, Local Civil Rule 83.1.B-MDAL; Local Civil Rule 83.4.B-SDGA.

Martin and Naides did not seek *pro hac vice* status, they should not be paid at an attorney rate. In so rejecting, Judge Currie "conclude[d] that the use of contract attorneys not admitted to practice before this court does not preclude recovery at an attorney rate where the contract attorneys merely assisted in drafting documents." (Exhibits to Opening Br. of Priestley at 12). In *Davis* and *Peter*, Judge Joseph F. Anderson expressly stated that he did not quarrel with this conclusion. However, he persuasively reasoned that when a non-admitted attorney's conduct in the district court's jurisdiction amounts to appearing in the jurisdiction, *pro hac vice* admission is required. Moreover, a district court decision such as *Clowney* "which has not withstood the acid test of appellate review cannot be regarded as authoritative, much less dispositive . . . ." *Bank of Marin v. England*, 352 F.2d 186, 189 n.1 (9th Cir. 1965), *rev'd on other grounds*, 385 U.S. 99 (1966); *see also Jensen v. Conrad*, 570 F. Supp. 91, 106-07 (D.S.C. March 4, 1983) (quoting same from *Bank of Marin*, 352 F.2d at 189 n.1). Finally, any aid that *Clowney* could provide Attorneys Martin and Naides in the equitable calculus is completely nullified by the following facts showing the pair had ample notice that their *modus operandi* in Social Security disability cases before the district court violated Local Civil Rule 83.I.05DSC, prior to their seeking attorneys' fees under the EAJA in the present cases: (1) prior to the filing of motions for attorneys' fees in *Davis*, *Peter*, and *Priestley*, a different district court judge strongly recommended that Attorneys Martin and Naides apply for *pro hac vice* admission if they engage in the preparation of briefs on behalf of a client they hold themselves out as representing in the district court, *Pace v. Astrue*, No. 9:07-00546-SB (Docket Entry No. 35 at 2 n.1) (D.S.C. May 9, 2008); (2) prior to the filing of motions for attorneys' fees in *Peter* and *Priestley*, yet another district court judge granted a Social Security disability claimant fees under the EAJA for the attorney time of Attorneys Martin and Naides, but warned that it "may consider reducing the rate of out of state counsel" if out of state counsel did not seek *pro hac vice* admission in the future," *Freeman v. Astrue*, No.

0:06-02255-TLW (Docket Entry No. 25 at 2) (D.S.C. July 24, 2008); and (3) prior to Priestley filing her motion for attorneys' fees, a third district court judge twice cautioned Attorneys Martin and Naides against continuing to represent clients in the district court without applying for admission *pro hac vice*, *Thompson v. Comm'r of Soc. Sec.*, No. 0:07-1424-RBH (Docket Entry No. 35 at 3-4) (D.S.C. May 13, 2009); *Tadlock v. Comm'r of Soc. Sec.*, No. 8:06-3610-RBH (Docket Entry No. 28 at 4) (D.S.C. April 9, 2009). Notably, the majority opinion virtually ignores these unambiguous prior warnings received by Attorneys Martin and Naides, which put them on fair notice that their actions violated Local Civil Rule 83.I.05DSC. Relatedly, I also note that, unable to make a case that the district court clearly erred in finding that Martin and Naides violated Local Civil Rule 83.I.05DSC, with respect to their conduct in the present cases, the majority attempts to downplay such finding by characterizing the violations as "quite thin and, at most, of a technical nature," *ante* at 14. The attempt is without effect, because the record evidence, as set forth in detail herein, amply demonstrates that the violations were flagrant and followed a well-documented history of the same violative behavior in over fifty Social Security cases in the district court.

In conclusion, for the reasons stated, I would affirm the orders appealed *in toto*. Specifically, I would affirm the district court's reduction of the rate at which Attorney McChesney was compensated for travel time in *Davis* and affirm the district court's refusal to award Davis attorney fees under the EAJA for the attorney time of Attorney Martin and its refusal to award Peter and Priestley attorneys' fees under the EAJA for the attorney time of Attorneys Martin and Naides.